**No. C-1501**

**In re the Marriage of Beth Heinzman and William G. Heinzman**

(596 P.2d 61)

Decided June 11, 1979.                                    Rehearing denied July 2, 1979.

Burton L. Cawthorne, for petitioner.

Jack O. Robinson, for respondent.

*En Banc.*

MR. JUSTICE GROVES delivered the opinion of the Court.

This case was commenced as an action for dissolution of a common law marriage in the district court of Boulder County. For convenience the petitioner is referred to as "Beth" and the respondent as "William." The court found that there was no marriage, but with the consent of the parties[1] proceeded to a determination of their respective rights in a residence property, the title to which was in their names in joint tenancy. It ordered Beth to convey her record interest to William. On review the ruling that there was no marriage was not raised. The court of appeals by a two to one majority, 40 Colo. App. 262, 579 P.2d 638, affirmed as to the property disposition on grounds somewhat different from those of the trial court. We granted certiorari to the court of appeals and now affirm on the grounds

---

[1] *See* C.R.C.P. 15(b) and 54(c), and section 14-10-111(6), C.R.S. 1973.

used by the trial court.

In 1970 Beth had been occupying the residence property as a tenant. That summer it appeared that her tenancy would end as the owner intended to sell the property. William entered into a contract to purchase it in July 1970 and the real estate transaction thereunder was "closed" the following December. William moved into the residence in late September 1970, and he and Beth resided there until June 1973.[2]

By deed executed by William on March 25, 1971 and recorded on April 16, 1971, the residence property was conveyed to William and Beth in joint tenancy. Beth was there designated as "Beth Lavato."[3] In June 1973 Beth moved to Sparks, Nevada, and she and William did not live together thereafter. William married another on August 26, 1974. The case was tried on June 20, 1975.

At the conclusion of the trial the district court, in addition to ruling that there was no common law marriage, found: that William intended and wished to marry Beth; that he gave her an engagement ring in the spring of 1971; that "from the acts of the parties in addition to their admitted cohabitation, it would seem to be a presumption on the side of engagement"; "that an engagement did in fact exist"; "that the gift of real estate . . . was a gift conditioned upon the subsequent ceremonial marriage"; that Beth had abandoned the home and the engagement; and that the condition was not defeated by William's actions. The court ruled that the transfer of the real estate was a gift conditioned upon a subsequent ceremonial marriage, and it ordered Beth to transfer interest in the property to William.

The testimony was in conflict. The trial court rejected Beth's version of the facts and its findings of fact were predicated upon William's testimony. There was evidence to support the findings of the trial judge and we cannot question them. *Linley v. Hanson,* 173 Colo. 239, 477 P.2d 453 (1970); *Brewer v. Williams,* 147 Colo. 146, 362 P.2d 1033 (1961).

In affirming, the 2-judge majority of the court of appeals division ruled *sua sponte* that an equitable trust should be imposed as was imposed in *Page v. Clark,* 40 Colo. App. 24, 572 P.2d 1214 (1977). It ruled that, "to avoid unjust enrichment here, based upon the factual findings of the court, Beth, an equitable trustee, must reconvey her interest in the home to William."

■ The court of appeal's opinion in this case was announced on December 15, 1977. On March 26, 1979 *Page v. Clark,* 197 Colo. 306, 592 P.2d 792, was announced by this court and disapproved the new remedy of "equitable trust" used by the court of appeals in its *Page v. Clark* deci-

---

[2] William testified that they had a brief separation from May 1971 to July 1971, during which he did not reside at this residence.

[3] It appears that Beth's name was there misspelled and that the name really is spelled Lovato.

sion. As a result, if the district court here is to be affirmed on the basis of a trust relationship, we must declare that there was either a constructive trust or a resulting trust. This we cannot do. There was neither.

■ Defined with considerable simplicity, a constructive trust is a fraud-rectifying trust and a resulting trust is an intent-enforcing trust.[4] *See* the discussion of constructive and resulting trusts in this court's opinion in *Page v. Clark, supra,* and the authorities cited therein. In the instant case there was not an intent to create a trust and no fraud was involved. This being the case, we now look to see if the judgment of the trial court can be sustained. We perceive that it can.

■ The majority rule appears to be that B must transfer back to A a gift received and held under the following circumstances: A and B are engaged to be married to each other. In contemplation of the formal commencement of that life of bliss A makes a gift to B. Later, through no fault of A, B breaks the engagement. The majority of courts reason that such a gift was conditioned upon a subsequent ceremonial marriage. *DeCicco v. Barker,* 339 Mass. 457, 159 N.E.2d 534 (1959). *Semenza v. Alfano,* 443 Pa. 201, 279 A.2d 29 (1971); *Pavlicic v. Vogtsberger,* 390 Pa. 502, 136 A.2d 127 (1957); *Guffin v. Kelly,* 191 Ga. 880, 14 S.E.2d 50 (1941); *Annot.,* 46 A.L.R.3d 584 (1972).[5] We adopt the majority rule as applied to the facts here; and affirm the trial court's conclusion that the deed was conditioned upon a subsequent ceremonial marriage.

■ Beth contends that recovery of the property under these circumstances is proscribed by the Statute of Frauds (sections 38-10-106 and 108, C.R.S. 1973) and the Heart Balm Statute (sections 13-20-202 and 203, C.R.S. 1973). The Statute of Frauds does not prevent the declaration of a constructive trust. *Semenza v. Alfano, supra.* By the same reasoning it does not prevent recovery of property delivered conditionally under the particular circumstances here.

The Heart Balm Statute reads:

"All civil causes of action for breach of promise to marry, alienation of affections, criminal conversation, and seduction are hereby abolished.

"No act done within this state shall operate to give rise, either within or without this state, to any of the rights of action abolished [herein]. No contract to marry made or entered into in this state shall operate to give rise, either within or without this state, to any cause or right of action for the breach thereof, nor shall any contract to marry made in any other state give rise to any cause of action within this state for the breach

---

[4] This is a paraphrase of a comment in *Bogert, Trusts and Trustees* (2d ed. revised) section 471 p. 7, citing *Costigan, The Classification of Trusts as Express, Resulting and Constructive.* 27 Harv. L. Rev. 437 (1914).

[5] On the other hand, *see Williams v. Reich,* 123 Cal. App. 128, 10 P.2d 1030 (1932); *Rosenberg v. Lewis,* 210 App. Div. 690, 206 N.Y.S. 353 (1924).

thereof." Sections 13-20-202 and 203, C.R.S. 1973.

We follow the rule that this statute bars actions for damages suffered from breach of promise to marry and other direct consequences of the breach, such as humiliation; but that it should not be extended to affect common law principles governing a gift to a financee made on condition of marriage, with condition broken by the donee. *Norman v. Burks,* 93 Cal. App. 2d 687, 209 P.2d 815 (1949); *Gill v. Shively,* 320 So.2d 415, (Fla. App. 1975); *Beberman v. Segal,* 6 N.J. Super. 472, 69 A.2d 587 (1949); *Pavlicic v. Vogtsberger, supra; H. Clark, Domestic Relations* § 1.5 (1968).

Judgment affirmed.

MR. JUSTICE CARRIGAN does not participate.