Robert DESTEFANO and Edna
Destefano, Petitioners,

v.

Dennis GRABRIAN and Diocese of
Colorado Springs, Respondents.

No. 86SC336.

Supreme Court of Colorado,
En Banc.

Oct. 17, 1988.

Rehearing Denied Nov. 7, 1988.

Peter A. Goldstein, P.C., Colorado Springs, for petitioner Robert Destefano.

Ranson, Thomas & Yukawa, P.C., Richard Ranson, Colorado Springs, for petitioner Edna Destefano.

Kane and Donley, Thomas K. Kane, Colorado Springs, for respondent Dennis Grabrian.

Sparks, Dix, Enoch, Suthers & Winslow, P.C., John W. Suthers, L. Martin Nussbaum, Colorado Springs, for respondent Diocese of Colorado Springs.

ERICKSON, Justice.

Plaintiff-petitioner Robert Destefano (Robert) and crossclaimant-petitioner Edna Destefano (Edna) sought review of the court of appeals decision which affirmed the dismissal of their claims against respondents Dennis Grabrian (Grabrian), a Catholic priest, and the Diocese of Colorado Springs (diocese), and granted summary judgment. *Destefano v. Grabrian*, 729 P.2d 1018 (Colo.App.1986) (Sternberg, J., dissenting). We granted certiorari on two issues: (1) whether section 13–20–202, 6A C.R.S. (1987) (heart balm statute), bars an action against a person who assumes the role of marriage counselor when the counseling relationship results in consensual sexual relations between a counselor and a counselee; and (2) whether the free exercise clause of the first amendment to the United States Constitution prohibits tort liability for conduct which arose in the context of a counseling relationship between a clergyman and members of his congregation. The court of appeals reached the right result in affirming the dismissal of Edna's fifth crossclaim and Robert's first and second claims for relief. Based upon the record, the defendants' motions should not have been considered to be motions for summary judgment. Accordingly, we affirm the result in part, reverse in part, and return the case to the court of appeals with directions to remand to the trial court for further proceedings consistent with this opinion.

I.

Robert filed a complaint naming as defendants his wife Edna; Grabrian, a Catholic priest for the diocese; and the diocese. Robert later filed an amended complaint which named only Grabrian and the diocese as defendants and sought no relief against Edna. Subsequently, Edna filed an answer and crossclaim [1] which was directed to the original complaint.

---

1. As the pleadings are now structured, Robert is not asserting a claim against Edna. Robert did not file a motion pursuant to C.R.C.P. 21 to drop Edna as a defendant. Consequently, no court order was entered to drop Edna as a defendant, and she remains a party. *See United States v. Wyoming Nat. Bank,* 505 F.2d 1064 (10th Cir. 1974); *Zarate v. State Dep't of Health & Rehabilitation Servs.,* 347 F.Supp. 1004 (S.D.Fla.1971);

*Kennan v. Warren,* 328 F.Supp. 525 (W.D.Wis. 1971). Edna's answer and crossclaim respond to the allegations in the original complaint. We have grave concerns about the procedural irregularities that appear in the skeletal record in this case but we consider Edna's crossclaims on certiorari since the issue was addressed by both the district court and the court of appeals.

Grabrian and the diocese filed motions to dismiss for failure to state a claim upon which relief can be granted. C.R.C.P. 12(b)(5).[2] In considering such a motion, we are required to construe the allegations of the pleadings in the light most favorable to the plaintiff, and we must assume that the allegations contained in Robert's complaint and in Edna's cross-complaint are true. *See Abts v. Board of Educ.*, 622 P.2d 518, 521 (Colo.1980); *Bell v. Arnold*, 175 Colo. 277, 281, 487 P.2d 545, 547 (1971). Whether any of Robert's and Edna's claims are true can only be resolved by a trial on the merits. Accordingly, we agree with the dissent in the court of appeals and hold that summary judgment should not have been granted. *Destefano v. Grabrian*, 729 P.2d 1018. The issue is whether the district court erred in dismissing Robert's claims and Edna's crossclaims for failure to state a claim upon which relief may be granted.

The complaint alleges that in 1979, Robert and Edna were having marital problems which led them to seek marriage counseling from Grabrian. The Destefanos were both Catholics who had "faith and confidence in their parish priest." Grabrian's supervisors knew or should have known that he was unsuited for marriage counseling and "would cause harm to a jeopardized marital relationship." To comply with church doctrine regarding marriage and divorce, the diocese encouraged its parishioners to participate in marriage counseling.

During the course of the counseling relationship, Grabrian developed a relationship with Edna, which "Grabrian knew or should have known would lead to additional marital problems between [Robert] and Edna." Grabrian knew that his intimate relationship with Edna probably would cause the dissolution of the Destefano marriage. Robert and Edna were told by Grabrian that he would act as their marriage counselor and that they could trust him. Grabrian's continued involvement in this relationship was occasioned by a reckless disregard for Robert's rights and feelings. The diocese owed a continuing duty to Robert and others similarly situated to reasonably train, interview, and supervise priests engaged in counseling married couples. With actual or constructive knowledge of Grabrian's prior indiscretions, the diocese willfully and recklessly breached its duty. Grabrian's conduct resulted in an intimate relationship between Grabrian and Edna that contributed to the dissolution of the Destefano marriage.

Based upon these allegations, Robert sought compensatory and exemplary damages for: (1) negligence against Grabrian for the manner in which he conducted the counseling and against the diocese on the theory of respondeat superior for failing to train, monitor, and supervise Grabrian adequately; (2) intentional infliction of emotional distress and outrageous conduct of both Grabrian and the diocese; and (3) Grabrian's breach of fiduciary duty. Due to the alleged willful and reckless nature of Grabrian's and the diocese's actions, Robert requested exemplary damages under each claim for relief.

In her crossclaim, Edna alleged the following facts that we will assume to be true in considering the motions to dismiss. *Abts v. Board of Educ.*, 622 P.2d 518. Marital difficulties prompted the Destefanos to seek the assistance of a professional marriage counselor through St. Mary's

---

2. The court of appeals treated Grabrian's and the diocese's C.R.C.P. 12(b) motion to dismiss as a motion for summary judgment under C.R.C.P. 56. The trial court dismissed the claims of Robert and Edna under C.R.C.P. 12(b). No affidavits or other materials were submitted to support Grabrian's and the diocese's motion and the factual issues are not undisputed. A motion to dismiss can only be considered as a motion for summary judgment when affidavits or other matters apart from the pleadings are presented and not excluded by the court. *Travelers Ins.*

*Co. v. Savio*, 706 P.2d 1258, 1276 (Colo.1985); *Enger v. Walker Field, Colo. Pub. Airport Auth.*, 181 Colo. 253, 256–57, 508 P.2d 1245, 1247 (1973).

Here, the trial court admitted the truth of the factual allegations and determined that the claims asserted by both Robert and Edna did not state a legally cognizable claim upon which relief can be granted. *See Churchey v. Adolph Coors Co.*, 759 P.2d 1336 (Colo.1988), for an analysis of summary judgment and the disputed fact issue.

Catholic Church, which was under the jurisdiction of the diocese. The Destefanos met on two occasions with Grabrian, who represented himself to be a professional with the necessary skills to assist people in need of professional marriage counseling. Grabrian agreed to assist them as a couple. Thereafter, Grabrian informed Robert that he should seek his own counselor. Grabrian represented to Edna that he was a capable, trained professional who could be relied upon to assist her with the serious marital and personal problems she was experiencing, and that she could trust him to act in her best interests. She in fact trusted him and followed his advice. Grabrian knew that his conduct with Edna would result in the collapse and dissolution of her marriage, and would cause the Destefanos extreme and permanent emotional suffering.

Knowing that Edna was "extremely vulnerable emotionally," Grabrian began a relationship with Edna which turned adulterous due to the actions of Grabrian. Grabrian had repeatedly engaged in sexual relations with other women similarly situated. Grabrian's past conduct was known or should have been known to the diocese. The actions of Grabrian and the diocese entitled Edna to compensatory and exemplary damages for their breach of fiduciary duty, negligence, and outrageous conduct.

The trial court granted the motions of Grabrian and the diocese to dismiss, finding that the issues raised by the Destefanos "are inextricably linked to questions of doctrine, theology, the usage and customs of the [Catholic] Church, written laws, and the fundamental organization of the Church." The trial court concluded that no compelling state interest warranted intrusion by the courts into the internal standards of the church. The trial court also stated that the Destefanos' claims are prohibited by section 13–20–201, 6 C.R.S. (1987). A divided panel of the court of appeals affirmed the trial court and concluded that both Robert's and Edna's claims were barred by the heart balm statute.

## II.

 Robert and Edna contend that their claims are not barred by section 13–20–202, 6 C.R.S. (1987) (heart balm statute), which provides: "All civil causes of action for breach of promise to marry, alienation of affections, criminal conversation, and seduction are hereby abolished." [3] In *Goldberg v. Musim*, 162 Colo. 461, 427 P.2d 698 (1967), we addressed the issue of whether a complaint framed as an impairment of contract action was in fact a claim for alienation of affections prohibited by the predecessor to section 13–20–202, section 41–3–1, C.R.S. (1963). We said:

We agree with the trial court when it concluded that this complaint sets forth what in law is a claim for alienation of affections. The injury in such an action is one of loss of affection and consortium, including loss of society, companionship and aid. The action required on the part of a defendant in such a case is simply inducing the spouse of the plaintiff to leave, or, once having left, to remain separated from the plaintiff. The action necessarily involves intent to induce the spouse to separate.... [T]he facts alleged in ... the complaint place them squarely within the abolished action, for all that is alleged rises out of a relationship, i.e. an inducement to sepa-

3. Professor Prosser has noted that:
 Criminal conversation, enticement, and alienation of affections still are often treated as separate torts, but there is no good reason for distinguishing them. They represent three forms of interference with aspects of the same relational interest, and of course all three may be present in the same case. When the action is for criminal conversation, proof of enticement or alienation will go to increase the damages, and the converse is likewise true. There is now a decided tendency to confuse the three, or to lump them together, usually under the name "alienation of affections," without any attempt to distinguish the possible elements of the tort.
 W. Prosser, *Handbook of the Law of Torts* § 124, at 876–77 (4th ed. 1971).
 While we agree that there may well be no good reason to distinguish alienation of affections, criminal conversation, and seduction from each other, we think it necessary to do so here because the heart balm statute enumerates each separately.

rate and resulting loss of society, loss of services, pain, suffering and humiliation. *Id.* at 467, 427 P.2d at 701 (citations omitted). *Goldberg,* however, did not state that all cases that include elements of the abolished actions must be dismissed. In *Goldberg* we noted that the plaintiff's claim for fraudulent transfer of her husband's property was more appropriately heard in plaintiff's parallel action for separate maintenance. We did not state that the property claim fell within the statutory ban.

Here, the court of appeals relied upon *Nicholson v. Han,* 12 Mich.App. 35, 162 N.W.2d 313 (1968), a case in which a husband sued the family doctor who had been functioning as a marriage counselor and who had warranted an improvement in marital relations. After the plaintiff and his wife were divorced, the plaintiff learned that his wife and the defendant had commenced a sexual relationship during the course of counseling. Although the complaint was drafted in the language of fraud and breach of contract, the case was dismissed as falling within the prohibited actions of seduction, alienation of affections, and criminal conversation.

The Michigan Court of Appeals later held, in *Cotton v. Kambly,* 101 Mich.App. 537, 300 N.W.2d 627 (1980), that the abolition of claims for seduction did not bar plaintiff's malpractice claim against her psychiatrist who had induced her to engage in sexual activities under the guise of therapy. The court distinguished *Nicholson,* stating that the issue of malpractice was never raised in that case since the appeal from the trial court was dismissed on the breach of contract and fraud counts only. *Id.* at 539, 300 N.W.2d at 628. The court held that although the elements of seduction were present, the essence of the action was not for seduction but rather for breach of professional standards of care. In so holding, the court stated:

> Part of plaintiff's claim is for medical malpractice, which has been defined as the failure of a member of the medical profession, employed to treat a case professionally, to fulfill the duty to exercise that degree of skill, care and diligence exercised by members of the same profession, practicing in the same or similar locality, in light of the present state of medical science. Plaintiff alleges that defendant induced her to engage in sexual relations with him as part of her prescribed therapy. We see no reason for distinguishing between this type of malpractice and others, such as improper administration of a drug or a defective operation. In each situation, the essence of the claim is the doctor's departure from proper standards of medical practice.

*Id.* at 540–41, 300 N.W.2d at 628–29.

Other courts have also focused on the critical elements of the complaint and have permitted recovery despite the presence of claims which have been abolished. In *Gasper v. Lighthouse, Inc.,* 73 Md.App. 367, 533 A.2d 1358 (1987), *cert. denied,* 311 Md. 718, 537 A.2d 272 (1988), a husband sued a marriage counselor and the counselor's employer, asserting breach of contract and tort claims as a result of the sexual relationship between his wife and the counselor that occurred while he and his wife were undergoing counseling. The court stated that the:

> [A]bolition of the actions for alienation of affections and criminal conversation does not preclude a person from maintaining a traditional breach of contract action or a recognized tort action merely because the breach arose from an improper liaison with the plaintiff's spouse or because one effect of the alleged breach or tortious conduct was a disruption or breakup of his or her marriage. What *is* precluded, however, is the refitting of the abolished actions into other forms. One cannot sue to recover for injuries arising from "defilement of the marriage bed" or from an interference with the marriage by simply casting the defendant's conduct as a breach of contract, or negligence, or some other intentional tort. It is *that* kind of sham that the case law prevents.

*Id.* at 372, 533 A.2d at 1360 (citations omitted). The court concluded that all counts were essentially claims for alienation of

affections and criminal conversation, and upheld the dismissal of the complaint.[4]

In *Lund v. Caple*, 100 Wash.2d 739, 675 P.2d 226 (1984), the Washington Supreme Court rejected a husband's claim for loss of consortium and outrageous conduct resulting from the defendant clergyman's sexual misconduct with the plaintiff's wife, who had consulted the defendant for marital and personal counseling.[5] The court affirmed the trial court's entry of summary judgment based on the holding in *Wyman v. Wallace*, 94 Wash.2d 99, 615 P.2d 452 (1980), reasoning that the wife's refusal to join in the lawsuit indicated the possibility of a vengeful motive on the part of the husband and that the policy considerations of abolishing actions for alienation of affection applied. The outrageous conduct claim was also dismissed, not on the basis of the "heart balm" rationale, but because the plaintiff, who was not present when the alleged conduct occurred, did not establish the necessary elements of the tort of outrageous conduct. The *Lund* opinion, however, did not preclude:

> [A]n action against a counselor, pastoral or otherwise, in which a counselor is negligent in treating either a husband or wife. It is conceivable that a malpractice action would be appropriate where a counselor fails to conform to an appropriate standard of care, injures the patient/spouse which in turn results in loss of consortium to the other spouse.

*Lund*, 675 P.2d at 231. The court then stated that the action was essentially a suit for alienation of affections because although the underlying tort was based on the "impaired" spouse's extramarital relationship, the "impaired" spouse did not assert a claim. "Absent the 'impaired' spouse's claims, remaining allegations amount to an alienation of affections actions [sic]...." *Id.*

In determining the scope of Colorado's heart balm statute, we are guided by section 13–20–201, 6A C.R.S. (1987), which provides:

> **Legislative declaration.** The remedies provided by law on or before April 27, 1937, for the enforcement of actions based upon alleged alienation of affections, criminal conversation, seduction, and breach of contract to marry have been subjected to grave abuses, caused extreme annoyance, embarrassment, humiliation, and pecuniary damage to many persons wholly innocent and free of any wrongdoing who were merely the victims of circumstances, and have been exercised by unscrupulous persons for their unjust enrichment, and have furnished vehicles for the commission or attempted commission of crime and in many cases have resulted in the perpetration of frauds, it is hereby declared as the public policy of the state that the best interests of the people of the state will be served by the abolition thereof. Consequently, in the public interest, the necessity for the enactment of this part 2 is hereby declared as a matter of legislative determination.

In interpreting section 13–20–202, we must give effect to the policy considerations enumerated in section 13–20–201, but should not read the statute so broadly as to preclude any cause of action involving extramarital affairs, regardless of whether a

---

**4.** *See also Richard H. v. Larry D.*, 198 Cal.App.3d 591, 596, 243 Cal.Rptr. 807, 810 (1988) ("We do not think the [heart balm] statute was intended to lower the standard of care which psychiatrists owe their patients, nor to permit them to avoid liability for breach of their professional and fiduciary responsibilities or commit fraud."); *Barbara A. v. John G.*, 145 Cal.App.3d 369, 193 Cal.Rptr. 422 (1983) (abolition of seduction did not bar action against attorney for sexual intercourse with client where action was based on battery and misrepresentation); *Van Meter v. Van Meter*, 328 N.W.2d 497 (Iowa 1983) (elements and policy considerations of intentional infliction of emotional distress were dif-

ferent from alienation of affections claim so that claim was not subject to dismissal merely because it arose from a failed marital relationship); *Roy v. Hartogs*, 85 Misc.2d 891, 381 N.Y. S.2d 587 (1976) (abolition of seduction as a cause of action does not preclude recovery for harm caused by a psychiatrist who had sexual intercourse with a patient as part of therapy).

**5.** Washington does not have a heart balm statute. The Washington Supreme Court, however, abolished alienation of affections as a viable claim in *Wyman v. Wallace*, 94 Wash.2d 99, 615 P.2d 452 (1980).

claim for relief which is not included in section 13–20–202 is enumerated. In our view, the heart balm statute only precludes those causes of action specifically listed in the statute. As we held in *Goldberg*, a plaintiff will not be able to mask one of the abolished actions behind a common law label. However, if the essence of the complaint is directed to a cause of action other than one which has been abolished, that claim is legally cognizable. Accordingly, we must review the legal sufficiency of the claims made by both Robert and Edna to determine whether any claim, admitting the truth of the factual allegations states, as a matter of law, a claim upon which relief may be granted. Because Edna has asserted claims that are more inclusive than those asserted by Robert, we will address the sufficiency of her claims first.

### III.

#### Edna's Claims

■ Grabrian and the diocese assert that the court of appeals properly upheld the trial court's dismissal of Edna's crossclaims because her claims were for seduction which were abolished by section 13–20–202. We disagree.

Seduction is "the act of a man in enticing a woman to have unlawful intercourse with him by means of persuasion, solicitation, promise, bribes, or other means without the employment of force." *Weinlich v. Coffee*, 67 Colo. 382, 176 P. 210 (1919) (citation omitted). In *Weinlich*, the court concluded that because the plaintiff was married at the time of the seduction and no statute permitted a seduction action by a married woman, she could not sue her seducer. *Id.* at 385, 176 P. 211. The court stated:

At common law a seduced female has no cause of action against her seducer, not only because she is a party to the wrongful act, but also because loss of service is indispensable to a right of recovery, and no one except those entitled to the services of the female can maintain an action for the seduction, the right of action being based solely upon the relation of master and servant. In many states, however, a right of action has been expressly given by statute to the female seduced. * * *

The statutes require that the female must be unmarried at the time of her seduction, in order to maintain an action therefor.

*Id.* at 384–85, 176 P. at 211 (citation omitted). The statute relating to the crime of seduction that was in effect when the General Assembly enacted the heart balm statute in 1937 was also limited to unmarried females.[6] Because Edna was married, we conclude that her crossclaim did not set forth a claim based on seduction.

Edna's allegations also do not set forth a claim for alienation of affections. As we previously stated, an element of a claim for alienation of affections is that the defendant must intend to induce the plaintiff's spouse to separate. For purposes of Edna's crossclaims, Edna is the plaintiff. Edna did not allege that Grabrian's acts were intended to cause Robert to separate from her. Nor, in our view, do the allegations, in essence, support such an interpretation. The crossclaim does not include a claim for alienation of affections.

Edna's crossclaim also fails to set forth a claim for criminal conversation. "A recovery for criminal conversation requires proof that there was a valid marriage and that the defendant had adulterous relations

---

6. Section 207, C.S.A. ch. 48 (1935) states:
 Any man who shall, under promise of marriage, seduce, and have illicit connection with any unmarried female, of previous chaste character, or who shall, without such promise of marriage, seduce and have illicit connection with any unmarried female, of previous chaste character, under the age of sixteen years, shall be guilty of a felony, and upon conviction shall be punished by imprisonment in the penitentiary, not exceeding ten years;

 provided, that no conviction shall be had under this section on the testimony of the female seduced, unsupported by other evidence, nor unless the indictment shall be found, or the information laid, within two years after the commission of the offense; and, provided, further, that the subsequent marriage of the parties, prior to judgment upon the indictment, or information, shall be a bar to the further prosecution of the offense.

with the plaintiff's spouse." 1 H. Clark, *The Law of Domestic Relations in the United States*, § 12.3, at 662 (2d ed. 1987).[7] Since Edna does not allege that Grabrian's adulterous conduct involved her husband, her crossclaim is not an action for criminal conversation.

Accordingly, we hold that Edna's crossclaim is not barred by section 13–20–202.

Edna set forth five claims for relief in her crossclaim: (1) Grabrian breached his fiduciary duty to Edna; (2) Grabrian negligently performed his duty as a marital counselor; (3) Grabrian engaged in outrageous conduct with regard to Edna; (4) the diocese knew or should have known of Grabrian's negligence, breach of fiduciary duty, and outrageous conduct, and as such breached its duty to supervise Grabrian; (5) because the diocese had jurisdiction over and control of Grabrian, the acts and negligence of Grabrian are imputed to the diocese. We examine each of these claims in turn to determine whether they were properly dismissed by the trial court.

### A.

The threshold issue that we must first resolve is whether a member of the clergy, who holds himself out as being trained and capable of conducting marital counseling,[8] is immune from any liability for harm caused by his counseling by virtue of the first amendment.

Grabrian and the diocese assert that Robert's and Edna's claims are "violative of the First Amendment to the United States Constitution in that the performance of pastoral duties by a Catholic priest, including sacramental counseling of parishioners, is a matter of ecclesiastical cogni-

zance and policy with which a civil court cannot interfere." The first amendment to the United States Constitution prohibits any "law respecting the establishment of religion, or prohibiting the free exercise thereof." U.S. Const. amend. 1. Marital counseling by a cleric presents difficult questions because it often incorporates both religious counseling and secular counseling. While we agree that spiritual counseling, including marital counseling by a priest, may implicate first amendment rights, we are not convinced that the allegations in Edna's crossclaim permit Grabrian to assert a free exercise clause defense.

The United States Supreme Court has distinguished the absolute freedom of religious belief from the limited freedom to act upon those beliefs. *Cantwell v. Connecticut*, 310 U.S. 296, 303–04, 60 S.Ct. 900, 903–04, 84 L.Ed. 1213 (1940). In *Abington School District v. Schempp*, 374 U.S. 203, 223, 83 S.Ct. 1560, 1572, 10 L.Ed.2d 844 (1963), the Court stated that a party challenging governmental action as an infringement of his free exercise rights must show that there is a coercive effect against his practice of religion. When the free exercise clause is raised as a defense, the threshold question is whether the conduct of the defendant is religious. *Wisconsin v. Yoder*, 406 U.S. 205, 215–16, 92 S.Ct. 1526, 1533–34, 32 L.Ed.2d 15 (1972) ("to have the protection of the [r]eligious [c]lauses the claims must be rooted in religious belief"); *see* Note, *Intentional Infliction of Emotional Distress by Spiritual Counselors: Can Outrageous Conduct be "Free Exercise"?*, 84 Mich.L.Rev. 1269, 1302 (1986). "In the spiritual counseling context, the free exercise clause is relevant only if the

---

7. Colorado criminal conversation cases, while not specifically defining the elements of the claim, appear to agree with this definition. *See, e.g., Bradbury v. Brooks*, 82 Colo. 133, 257 P. 359 (1927); *Sullivan v. Valiquette*, 66 Colo. 170, 180 P. 91 (1919); *Stark v. Johnson*, 43 Colo. 243, 95 P. 930 (1908).

8. Grabrian and the diocese take issue with characterizing Grabrian as a "person who had assumed the role of marriage counselor." In her crossclaim, Edna alleged that "the Defendant represented himself to be a professional with the necessary skills to assist people in need of

counseling" and that "the Defendant represented to Edna Destefano that he was a capable, trained professional who could be relied upon to assist her with the serious marital and personal problems she was having." For purposes of this appeal, we must assume the truth of these allegations, and therefore conclude that the characterization of Grabrian is proper. The nature of the counseling relationship between Grabrian and Edna, beyond what is alleged in the pleadings, is an issue of fact to be determined at trial.

defendant can show that the conduct that allegedly caused plaintiff's distress was in fact 'part of the belief and practices' of the religious group." *Id.* (citing *Christofferson v. Church of Scientology,* 57 Or.App. 203, 245, 644 P.2d 577, 604 (1982). The alleged misconduct of Grabrian that is at the very heart of Edna's crossclaim is that he induced Edna to engage in a sexual relationship during the course, and as a result, of marital counseling. Edna alleged that her damages were a direct result of the sexual relationship. If the alleged conduct of Grabrian was dictated by his sincerely held religious beliefs or was consistent with the practice of his religion, we would have to resolve a difficult first amendment issue. This, however, is not the case. It has not been asserted that Grabrian's conduct falls within the practices or beliefs of the Catholic church. Grabrian's and the diocese's brief states that "every Catholic is well aware of the vow of celibacy required of a priest at the time of his ordination." The brief also points out that "sexual involvement by a priest has been held to be per se outside the scope of his employment." The brief recognizes and admits that sexual activity by a priest is fundamentally antithetical to Catholic doctrine. As such, the conduct upon which Edna's crossclaim is premised is, by definition, not an expression of a sincerely held religious belief.

Members of the clergy cannot, in all circumstances, use the shield of the first amendment as protection and as a basis for immunity from civil suit.[9] When the alleged wrongdoing of a cleric clearly falls outside the beliefs and doctrine of his religion, he cannot avail himself of the protection afforded by the first amendment.

### B.

■ Edna's first claim for relief alleges that Grabrian, in his position as a priest and as one who holds himself out to the community as a professional or trained marriage counselor, breached his fiduciary duty to her. A fiduciary is a person having a duty, created by his undertaking, to act primarily for the benefit of another in matters connected with the undertaking. A fiduciary has a duty to deal "with utmost good faith and solely for the benefit" of the beneficiary. *See* CJI–Civ. 31:16 (1980). A fiduciary's obligations to the beneficiary include, among other things, a duty of loyalty, *see* Restatement (Second) of Trusts § 170 (1959), a duty to exercise reasonable care and skill, *see* Restatement (Second) of Trusts § 174 (1959), and a duty to deal impartially with beneficiaries, *see* Restatement (Second) of Trusts § 183 (1959).

■ A person standing in a fiduciary relationship with another is subject to liability to the other for harm resulting from a breach of the duty imposed by the relationship. Restatement (Second) of Torts § 874 (1979). We have no difficulty in finding that Grabrian, as a marriage counselor to Robert and Edna, owed a fiduciary duty to Edna. His duty to Edna was "created by his undertaking" to counsel her. Grabrian had a duty, given the nature of the counseling relationship, to engage in conduct designed to improve the Destefanos' marital relationship. As a fiduciary, he was obligated not to engage in conduct which might harm the Destefanos' relationship. If the allegations are true, it is clear to us that Grabrian breached his duty and obligation when he had sexual intercourse with Edna. *See Horak v. Biris,* 130 Ill. App.3d 140, 85 Ill.Dec. 599, 474 N.E.2d 13 (1985); *see also Watts v. Cumberland County Hosp. Sys., Inc.,* 75 N.C.App. 1, 330 S.E.2d 242 (1985), *rev'd on other grounds,* 317 N.C. 321, 345 S.E.2d 201 (1986).

---

**9.** It is well-established that religious institutions are not immune from tort liability. *See, e.g., Heath v. First Baptist Church,* 341 So.2d 265 (Fla.App.) (church may be held liable for slip and fall on the premises under negligence claim), *cert. denied,* 348 So.2d 946 (Fla.1977); *Fintak v. Catholic Bishop of Chicago,* 51 Ill.App.

3d 391, 9 Ill.Dec. 223, 366 N.E.2d 480 (1977) (same); *Bass v. Aetna Ins. Co.,* 370 So.2d 511 (La.1979) (church responsible for negligence of pastor who created an unreasonable risk of injury by not clearing aisles to make way for the "running in the spirit," a common form of religious expression at that church).

## C.

■ Edna's second claim for relief alleges that Grabrian "negligently performed his duty as a marital counselor" and that a member of the clergy who represents himself as a competent marital counselor, has a duty to employ the degree of knowledge, skill, and judgment ordinarily possessed by members of that profession in the community. This claim of professional negligence is a claim for malpractice. *See Artist v. Butterweck,* 162 Colo. 365, 426 P.2d 559 (1967); *Dixon v. Norberg,* 113 Colo. 352, 157 P.2d 131 (1945). Malpractice consists of any professional misconduct, unreasonable lack of skill or fidelity in professional or fiduciary duties, evil practice, or illegal or immoral conduct. *See Black's Law Dictionary* 864 (5th ed. 1979). Since Grabrian is a Catholic priest, the malpractice claim alleged by Edna falls within the realm of "clergy malpractice." [10] To date, no court has acknowledged the existence of such a tort. [11] Since the claim for clergy malpractice is not supported by precedent and raises serious first amendment issues, we have concluded that Edna's second claim for relief was properly dismissed. We do not recognize the claim of "clergy malpractice."

Courts have generally recognized that when a professional counselor engages in sexual relations with a patient, client, or counselee, he may be held liable for damages. *See Roy v. Hartogs,* 85 Misc.2d 891, 381 N.Y.S.2d 587 (1976); *Cotton v. Kambly,* 101 Mich.App. 537, 300 N.W.2d 627 (1980). The General Assembly has enacted legislation which imposes penalties against psychologists who are engaged in sexual intimacies with their patients or clients. Section 12–43–111(1)(*l* ), 5 C.R.S. (1985), provides:

10. Grabrian and the diocese agree with this conclusion. In their brief they assert: "If this Court chooses to identify the claims of the petitioners as anything other than alienation of affections, seduction and adultery, it must, on the basis of self-description in the pleadings, recognize them as claims of 'clergy malpractice' against a Catholic priest and the Catholic Church."

At least one commentator has argued that the cause of action should be labeled "spiritual counseling malpractice." The dispute, in such an action, "focuses on counseling rendered by a member of the clergy in meeting the spiritual, emotional, and religious needs of the counselee." Ericsson, *Clergymen Malpractice: Ramifications of a New Theory,* 16 Val.U.L.Rev. 163, 166 (1981). We decline to use this terminology because counseling by members of the clergy is frequently directed to matters that are essentially secular in nature. "Family counseling and psychological counseling are two notable areas in which there is substantial overlap between the secular and religious aspects of a spiritual counselor's activities." Note, *Clergy Malpractice: Taking Spiritual Counseling Conflicts Beyond Intentional Tort Analysis,* 19 Rutgers L.J. 419, 437 (1988). *But see* Comment, *Made Out of Whole Cloth? A Constitutional Analysis of the Clergy Malpractice Concept,* 19 Cal.W.L.Rev. 507, 516 (1983) (pastoral counseling is a religious, not secular, activity in which "[i]t is impossible to separate the 'cure of the minds' from the 'cure of the souls' "); Comment, *Clergy Malpractice: Making Clergy Accountable to a Lower Power,* 14 Pepperdine L.Rev. 137, 139 (1986) ("While some degree of overlap and similarity may exist, the religious counselor remains distinct and unique from his secular counterpart, approaching therapy from an entirely different perspective.").

11. The only case, to date, that has involved the viability of a clergy malpractice claim is *Nally v. Grace Community Church of the Valley,* 157 Cal.App.3d 912, 204 Cal.Rptr. 302, (1984). In *Nally,* the parents of a young man who committed suicide brought a wrongful death action against the pastors who had been counseling him. In their claim entitled "Clergymen Malpractice," the parents alleged that the pastor had failed to exercise "the standard of care that a clergyman of his sect and training in the community" would exercise because he did not tell the young man to seek the counseling of a trained psychiatrist for his mental and emotional problems. The trial court granted summary judgment in favor of the defendant but the court of appeals reversed.

The court of appeals, however, did not address the viability of the clergy malpractice claim, but focused on the claim of intentional infliction of emotional distress. *Id.* 204 Cal. Rptr. at 308–09. The California Supreme Court refused to hear the appeal and ordered that the case be decertified on August 30, 1984, eliminating its precedential effect.

The issue of clergy malpractice also arose in *Hester v. Barnett,* 723 S.W.2d 544 (Mo.App. 1987), but that court did not address the viability of such a tort. *See also Handley v. Richards,* 518 So.2d 682 (Ala.1987) (Maddox, J., concurring) (quoting extensively from *Hester* and concluding that plaintiff failed to state a claim for clergy malpractice or "outrageous conduct.").

The [Colorado state board of psychologist examiners] has the power to deny, revoke, suspend, or refuse to renew any license, or to place on probation a licensee, upon proof that such person ... (*l*) Has maintained relationships with clients that are likely to impair his professional judgment or increase the risk of client exploitation, such as treating employees, supervisees, close colleagues, or relatives, or having sexual intimacies with clients....

However, the legislature has expressly evinced an intent to exclude religious ministers, priests, and rabbis from the statutory scheme which imposes liability upon psychologists for malpractice. Section 12–43–114(10), 5 C.R.S. (1985), states that:

Nothing in this article shall restrict a duly ordained minister, priest, or rabbi from carrying out his ministerial responsibilities while functioning in his ministerial capacity within a recognized religious organization and serving the spiritual needs of its constituency, provided he does not hold himself out to the public by any title or description incorporating the words "psychologist," "psychological," "psychology," or other term implying training, experience, or expertise in psychology.

The legislative intent of the General Assembly is even more pronounced in the 1988 enactment relating to penalties against mental health professionals and marriage and family therapists who engage in sexual intimacies with their clients or patients. The 1988 statute states that: "[a]ny person engaged in the practice of religious ministry shall not be required to comply with the provisions of this article," so long as such person does not hold himself out to the public by such titles as "psychologist," "licensed marriage and family therapist," or "licensed professional counselor," unless the person has been licensed pursuant to the state regulatory scheme. Chapter 88, section 1, § 12–43–215(1), 1988 Colo.Sess.Laws 535, 543–44.

Since the General Assembly has shown an intent to exclude religious counselors from the liability provisions of the statute creating liability for mental health professionals, we conclude that Edna's second claim for relief was properly dismissed.

#### D.

The crossclaim of Edna also asserts that Grabrian engaged in outrageous conduct. The test for outrageous conduct in Colorado is:

Outrageous Conduct Causing Severe Emotional Distress

(1) One who by extreme and outrageous conduct intentionally or recklessly causes severe emotional distress to another is subject to liability for such emotional distress to another, and if bodily harm to the other results from it, for such bodily harm.

*Churchey v. Adolph Coors Co.*, 759 P.2d 1336, 1350 (Colo.1988) (quoting *Rugg v. McCarty*, 173 Colo. 170, 177, 476 P.2d 753, 756 (1970) (quoting Restatement (Second) of Torts, § 46 comment d (1965))). Outrageous conduct must be "so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community." *Id.* (citations omitted). Viewing the crossclaim in the light most favorable to Edna, as we must, we conclude that the allegations in the complaint are sufficient to withstand a motion to dismiss. We note that on remand it is for the trial court, in the first instance, to determine whether the conduct at issue is "outrageous." *Id.*

#### E.

Edna, in her fourth and fifth claims for relief, alleges that the diocese breached its duty to supervise Grabrian, and that the actions of Grabrian should be imputed to the diocese. An employer may be held responsible for tortious conduct by an employee only if the tort is committed within the course and scope of employment. *McDonald v. Lakewood Country Club*, 170 Colo. 355, 461 P.2d 437 (1969); *see also National Cash Register Co. v. Lightner*, 154 Colo. 98, 111, 388 P.2d 781, 788 (1964) (The principal is ordinarily not

liable for the independent acts of the agent done in his own name outside the scope of his employment.). An employee is acting within the scope of his employment if he is engaged in the work which has been assigned to him by his employer or he is doing what is necessarily incidental to the work which has been assigned to him or which is customary within the business in which the employee is engaged. *Russell v. First Am. Mortgage Co.,* 39 Colo.App. 360, 565 P.2d 972 (1977). A priest's violation of his vow of celibacy is contrary to the instructions and doctrines of the Catholic church. When a priest has sexual intercourse with a parishioner it is not part of the priest's duties nor customary within the business of the church. Such conduct is contrary to the principles of Catholicism and is not incidental to the tasks assigned a priest by the diocese. Under the facts of this case there is no basis for imputing vicarious liability to the diocese for the alleged conduct of Grabrian.

 Even though Grabrian's acts do not create a basis for holding the diocese vicariously liable, the diocese may be directly liable for negligently supervising Grabrian. The Restatement (Second) of Agency § 213 (1958) states:

A person conducting an activity through servants or other agents is subject to liability for harm resulting from his conduct if he is negligent or reckless:

. . . .

(c) in the supervision of the activity. . . .

Comment d states:

The principal may be negligent because he has reason to know that the servant or other agent, because of his qualities, is likely to harm others in view of the work or instrumentalities entrusted to him. If the dangerous quality of the agent causes harm, the principal may be liable under the rule that one initiating conduct having an undue tendency to cause harm is liable therefor. [*See* Restatement (Second) of Torts § 317 (1965)].

. . . .

One who employs another to act for him is not liable under the rule stated in this Section merely because the one employed is incompetent, vicious, or careless. If liability results it is because, under the circumstances, the employer has not taken the care which a prudent man would take in selecting the person for the business in hand. What precautions must be taken depend upon the situation. One can normally assume that another who offers to perform simple work is competent. If, however, the work is likely to subject third persons to serious risk of great harm, there is a special duty of investigation.

Liability results under the rule stated in this Section, not because of the relation of the parties, but because the employer antecedently had reason to believe that an undue risk of harm would exist because of the employment. The employer is subject to liability only for such harm as is within the risk. If, therefore, the risk exists because of the quality of the employee, there is liability only to the extent that the harm is caused by the quality of the employee which the employer had reason to suppose would be likely to cause harm.

*See also Martinelli v. District Court,* 199 Colo. 163, 169, 612 P.2d 1083, 1087 (1980) (police department may be directly liable for negligence in selection, supervision or retention of police officers); *Rosane v. Senger,* 112 Colo. 363, 366, 149 P.2d 372, 374 (1944) (hospital may be directly liable for negligent acts of doctors); *Western Ins. Co. v. Brochner,* 682 P.2d 1213 (Colo. App.1983) (hospital may be directly liable for needless surgery of staff doctors), *rev'd on other grounds,* 724 P.2d 1293 (Colo.1986);[12] Restatement (Second) of Torts § 317 comment c (1965) ("[T]he mas-

---

12. Other jurisdictions have recognized the tort of negligent supervision. *See International Distrib. Corp. v. American Dist. Tel. Co.,* 569 F.2d 136 (D.C.Cir.1977); *Murphy v. Army Distaff Found., Inc.,* 458 A.2d 61 (D.C.App.1983); *F & T* *Co. v. Woods,* 92 N.M. 697, 594 P.2d 745 (1979); *Dempsey v. Walso Bureau, Inc.,* 431 Pa. 562, 246 A.2d 418 (1968); *Welsh Mfg. Div. of Textron v. Pinkerton's,* 474 A.2d 436 (R.I.1984).

ter may subject himself to liability ... by retaining in his employment servants who, to his knowledge, are in the habit of misconducting themselves in a manner dangerous to others."). Accordingly, we hold that a person who knows or should have known that an employee's conduct would subject third parties to an unreasonable risk of harm may be directly liable to third parties for harm proximately caused by his conduct.[13]

Edna's fourth claim for relief states:

Defendant Diocese of Colorado Springs knew or should have known that Defendant Grabrian was engaging in conduct which was outrageous, negligent, and a breach of his fiduciary duty, and Defendant Diocese owed a duty of supervision of said Defendant Grabrian to the public and breached said duty, causing the injuries and damages set forth above.

Accepting these allegations as true, Edna has stated a viable claim for relief against the diocese for negligent supervision.

We conclude that the trial court erred in dismissing Edna's fourth claim, but properly dismissed her fifth claim for relief.

## IV.

### Robert's Claims

■■ The court of appeals determined that Robert's claims, however denominated, "are based on alienation of affections and criminal conversation, both of which are barred by the 'heart balm statute.'" To determine the nature of the action, an examination of the substance of the complaint is required. *Erickson v. Publix Cab Co.,* 134 Colo. 203, 206, 301 P.2d 349, 351 (1956); *see Great Western Sugar Co. v. Jackson Lake Reservoir & Irrigation Co.,* 681 P.2d 484, 494 (Colo. 1984). In *Goldberg v. Musim,* 162 Colo. 461, 467, 427 P.2d 698, 701 (1967), we stated that an action for alienation of affections requires the following: (1) the defend-

ant must intend to induce the spouse to separate; (2) the defendant must induce the spouse of the plaintiff to leave or to remain separated from the plaintiff; and (3) such an action must result in loss of affection and consortium, including loss of society, companionship, and aid. Criminal conversation is essentially adultery and the action may be brought by the "innocent" spouse. *See* W. Keeton, D. Dobbs, R. Keeton & D. Owen, *Prosser and Keeton on the Law of Torts* § 124, at 917 (5th ed. 1984). Robert alleged that while counseling Edna, Grabrian engaged in conduct he "knew or should have known would lead to additional marital problems between the plaintiff and Edna and would cause the probable dissolution of their marriage." Robert further alleged that Grabrian and Edna "entered into an intimate relationship which contributed to the ultimate dissolution of the marriage between the plaintiff and Edna." The complaint asserts that the conduct of Grabrian affected the plaintiff and his marriage in the following manner:

There are minor children of that former marriage, and upon learning of the relationship between the Defendant Grabrian and Edna, the Plaintiff's ability to maintain a working parental relationship with Edna has been rendered impossible, any chance of salvaging the marriage was rendered impossible, and the Plaintiff has suffered and endured excruciating mental pain and suffering.

The substance of the first two claims in the complaint relates to the adulterous conduct of Grabrian that resulted in the destruction of the marriage and the injuries allegedly arising from that conduct. *See Gasper v. Lighthouse, Inc.,* 73 Md.App. 367, 373, 533 A.2d 1358, 1361 (1987). In our view, these allegations plainly set forth claims for alienation of affections and criminal conversation. We choose not to recognize any of Robert's common law claims apart from the third claim for relief because they are plainly claims for alienation of affections and criminal conversation. Accordingly,

---

13. If, on remand, Edna asserts that the diocese should have known of Grabrian's propensity to commit negligent or intentional acts, then she must show the diocese "antecedently had reason to believe that an undue risk of harm would exist because of the employment." Restatement (Second) of Agency § 213 comment d (1965).

we hold that the trial court properly dismissed Robert's first and second claims in the complaint under section 13–20–202, 6A C.R.S. (1987).

 Robert's third claim is one for breach of fiduciary duty. One standing in a position of trust is liable for harm resulting from a breach of the duty imposed by that position. Restatement (Second) of Torts § 874 (1979). The third claim alleges that the fiduciary duty breached by Grabrian and the diocese arose as a result of the counseling relationship entered into by Robert and Edna with Grabrian. As we concluded in reviewing Edna's first claim for relief, we believe that the nature of the counseling relationship alleged here gives rise to a clear duty on Grabrian's part to engage only in activity or conduct calculated to improve the Destefanos' marriage. This duty to refrain from any conduct which carries with it a risk of harm to the marital couple extends to both Robert and Edna. *See Horak v. Biris,* 130 Ill.App.3d 140, 85 Ill.Dec. 599, 474 N.E.2d 13 (1985). We have no difficulty in finding that Grabrian's intimacies with Edna falls within "conduct which carries with it a risk of harm" to Edna and Robert. As such, Robert's third claim for relief is sufficient to withstand the C.R.C.P. 12(b) motion to dismiss.

Accordingly, we reverse the summary judgment granted by the court of appeals, but affirm the resulting dismissal of Edna's second and fifth claims for relief and Robert's first and second claims for relief. We return the case to the court of appeals with directions to remand to the trial court for further proceedings consistent with this opinion.

QUINN, C.J., specially concurs, and MULLARKEY, J., joins in the special concurrence.

MULLARKEY, J., specially concurs, and QUINN, C.J., and LOHR and KIRSHBAUM, JJ., join in the special concurrence.

QUINN, Chief Justice, specially concurring:

I join Justice Mullarkey's special concurrence and specially concur in the result reached by the majority. I write separately to state my view that recognizing the so-called tort of "clergy malpractice" would not only contravene the legislative decision to exempt religious ministers from compliance with the provisions of the statutory scheme dealing with psychologists and other mental health practitioners, § 12–43–114(10), 5 C.R.S. (1985); *see also* ch. 88, sec. 1, § 12–43–215(1), 1988 Colo. Sess.Laws 535, 543–44, but also would derogate the constitutionally protected interest of ministers, priests, and rabbis to conduct bona fide marriage counseling as guaranteed by the Free Exercise Clause of the First Amendment. U.S. Const. amend. I.

I agree with the majority that Edna and Robert Destefano have stated cognizable claims for breach of fiduciary duty, and that Edna also has stated a claim for outrageous conduct. A fiduciary relation "exists between two persons when one of them is under a duty to act for or to give advice for the benefit of another upon matters within the scope of the relation." *Restatement (Second) of Torts* § 874 comment a (1977). Liability for breach of fiduciary duty is not dependent solely upon agreement or contract between the fiduciary and the beneficiary but results from the relation itself. *Id.* No one can reasonably dispute the fact that the relation between a Catholic priest and a person of the same faith who is receiving marriage counseling from the priest is a fiduciary relation founded on utmost trust and confidence. When, as here alleged, the priest abuses his position of trust by engaging in sexual relations with the counselee, the torts of breach of fiduciary duty and outrageous conduct are adequate to the task of providing the counselee with an effective remedy for this type of egregious misconduct.

I also agree that the obvious legislative intent behind the statutory scheme regulating psychologists and other mental health practitioners is to exempt duly ordained

ministers, priests, and rabbis from the licensing and regulatory scheme when they pursue their ministerial responsibilities in serving the spiritual needs of their constituencies. *See* § 12–43–114(10), 5 C.R.S. (1985); *see also* ch. 88, sec. 1, § 12–43–215(1), 1988 Colo.Sess.Laws 535, 543–44. This exemption proceeds from an obvious recognition of the fact that married persons experiencing marital difficulties frequently choose to obtain marriage counseling from their minister, priest, or rabbi precisely because they desire to resolve their difficulties in accordance with their religious beliefs. A rule that would subject the religious minister to the standard of practice applicable to licensed psychologists or marriage counselors in the community would endanger the very distinctions which make religious counseling desirable and which the General Assembly intended to protect against state regulation.

Moreover, the Free Exercise Clause of the First Amendment protects not only against the governmental prohibition of bona fide religious practices but also against the governmental secularization of such practices. *See, e.g., Hobbie v. Unemployment Appeals Commission,* 480 U.S. 136, 107 S.Ct. 1046, 94 L.Ed.2d 190 (1987); *Thomas v. Review Board,* 450 U.S. 707, 101 S.Ct. 1425, 67 L.Ed.2d 624 (1981); *Wisconsin v. Yoder,* 406 U.S. 205, 92 S.Ct. 1526, 32 L.Ed.2d 15 (1972); *Sherbert v. Verner,* 374 U.S. 398, 83 S.Ct. 1790, 10 L.Ed.2d 965 (1963). Legislative or judicial recognition of the so-called tort of "clergy malpractice" would be fundamentally flawed on two counts. First, it would result in secularizing various forms of sectarian religious counseling that are entitled to constitutional protection. Second, it would undoubtedly result in deterring some ministers, priests, and rabbis from engaging in marriage counseling in order to avoid any potential liability for not conforming to standards applicable to licensed psychologists or licensed marriage therapists, or, at the very least, incline them to adjust their counseling method to standards applicable to secular licensed counselors. The resulting effect on the religious counselor's right to engage in bona fide religious marriage

counseling, independently of secular standards applicable to licensed professionals, would be all too clear. Such a formidable obstacle to bona fide religious marriage counseling would fly directly in the face of the Free Exercise Clause of the First Amendment.

I am authorized to say that Justice MULLARKEY joins me in this special concurrence.

MULLARKEY, Justice, specially concurring:

I agree with Justice Erickson's opinion that both Destefanos should be permitted to try their claims for breach of fiduciary duty and that Edna should be permitted to try her claim for outrageous conduct. I write separately to express my views on the construction of the heart balm statute, now codified at sections 13–20–201 to –208, 6A C.R.S. (1987).

We construed the heart balm statute in two relatively recent cases: *In re Marriage of Heinzman,* 198 Colo. 36, 596 P.2d 61 (1979) and *Goldberg v. Musim,* 162 Colo. 461, 427 P.2d 698 (1967). In both cases, we emphasized the purposes of the heart balm statute and avoided the temptation to rely on a technical analysis of the elements of the abolished causes of action. The principal purpose of the heart balm statute, as expressed in section 13–20–201, is to eliminate meritless lawsuits brought by "unscrupulous persons for their unjust enrichment" after a failed romance or marriage. *See also* Note, *Heartbalm Statutes and Deceit Actions,* 83 Mich.L.Rev. 1770, 1776 n. 27 (1985). An equally important reason supporting the heart balm statute is "the increasing recognition that each spouse is an autonomous human being, that neither is the property of the other, and that a home so easily broken is not worth maintaining." W. Keeton, D. Dobbs, R. Keeton, and D. Owen, *Prosser and Keeton on the Law of Torts* § 124, at 930 (5th ed. 1984).

In *Heinzman,* we held that the heart balm statute does not bar a suit for return of an engagement gift after the engagement is broken. In the context of a broken engagement, we emphasized that the stat-

ute only barred "actions for damages suffered from the breach of promise to marry and other direct consequences of the breach, such as humiliation." 198 Colo. at 40, 596 P.2d at 64.

In *Goldberg*, we held that the heart balm statute barred a lawsuit brought by a woman who claimed that her marriage had been destroyed by a woman whom she named as the defendant. We noted that the plaintiff's claim in *Goldberg* was not a claim for alienation of affections within the common law definition as used in Colorado because "a wife had no right of action for alienation of the affections of her husband." 162 Colo. at 471, 427 P.2d at 703. Nevertheless, we held that the allegations of the complaint fell "squarely within the abolished action [alienation of affections], for all that is alleged arises out of a relationship, i.e., an inducement to separate and resulting loss of society, loss of services, pain, suffering and humiliation." *Id.* at 467, 427 P.2d at 701.

That is the approach we should apply to the case now before us. Attempting to establish the elements of the abolished causes of action can only lead to absurd results which have no application to contemporary society. Justice Erickson's approach would require us to take a snapshot in time as of 1937 when the heart balm statute was enacted and define the elements of the torts abolished by that act. This is an impossible analytical task because, as Prosser states, "there is no good reason" for distinguishing among the four torts and the torts usually are lumped together "under the general name of 'alienation of affections,' without any attempt to distinguish the possible elements of the tort." W. Prosser, *Handbook of the Law of Torts* § 124, at 876–77 (4th ed. 1971).

Justice Erickson at footnote 3, at 279, acknowledges the difficulty caused by attempting to analyze the elements of each tort, but states that we are compelled to do so because the heart balm statute lists four separate torts. In my opinion, the legisla-

ture listed the four torts (criminal conversation, alienation of affections, seduction, and breach of promise to marry) to make plain the sweeping nature of the law it passed because those four constituted all of the recognized heart balm actions. *See* Note, *Cannon v. Miller: The Brief Death of Alienation of Affections and Criminal Conversation in North Carolina*, 63 N.C. L.Rev. 1317, 1318 (1985). I would be more persuaded of the appropriateness of an element-by-element analysis if the Colorado legislature, like some of its contemporaries in other states, had selected only certain heart balm actions to abolish. *See* Note, *Heartbalm Statutes and Deceit Actions*, 83 Mich.L.Rev. at 1770–71. Since that is not the case, I would not adopt the form of analysis used by Justice Erickson.

Here, Justice Erickson concludes that Edna Destefano's claim is not barred by the heart balm statute because she was married and a married woman could not bring a claim for seduction. At 282–283. To support that conclusion, he must reach back to a 1918 case, *Weinlich v. Coffee*, 67 Colo. 382, 176 P. 210 (1918). The language of that case, embodying outmoded property and master/servant concepts in the context of marriage, has no relevance today. *Weinlich* should be allowed to rest in obscurity, not resurrected and given new currency in a modern opinion. The logical corollary of Justice Erickson's approach is that if Edna Destefano had consulted a priest for premarital counseling and the same course of events had occurred, her claim against the priest would be barred because she was an unmarried woman who could have brought a seduction claim at common law. Such a distinction could not be upheld under the married women's property act, section 14–2–202, 6B C.R.S. (1987), the equal protection guarantees of the state and federal constitutions, and the equal rights amendment of our state constitution.[1]

---

1. On a similar basis, states which have retained the claims abolished by our heart balm law permit both men and women to bring the claims. Identical rules apply to both. W. Pros-

ser, *Handbook of the Law of Torts* § 124 at 882. *See also* 1 H. Clark, *The Law of Domestic Relations in the United States* § 12.2, at 653 (alien-

If we look to the purposes of the heart balm statute, it is clear that the statute was not intended to bar claims based on breach of fiduciary duty and outrageous conduct against a priest who counseled both parties to the marriage. When such a special relationship is present, I would hold that the heart balm statute does not apply. *See Prosser and Keeton on the Law of Torts* § 124, at 930 (suggesting that heart balm statute should not bar relief "when the interference with family relations is accomplished by means of some independent tort"). *See also O'Neil v. Schuckardt*, 112 Idaho 472, 733 P.2d 693 (1986) (court judicially abolished cause of action for alienation of affections but held that plaintiff could bring invasion of privacy causes of action against church officials for allegedly inducing plaintiff's wife and children to join religious cult).

I am authorized to state that Chief Justice QUINN, Justice LOHR and Justice KIRSHBAUM join in this special concurrence.

ation of affections), § 12.3, at 662 (criminal conversation) (2d ed. 1987).