291 N.J. Super. 262 (1996)
677 A.2d 258
F.G., PLAINTIFF-APPELLANT,
v.
REV. ALEX MACDONELL, IN HIS CAPACITY AS FORMER RECTOR, AND REV. FLETCHER HARPER, IN HIS CAPACITY AS RECTOR OF ALL SAINTS' EPISCOPAL CHURCH, BERGENFIELD, NEW JERSEY AND ST. LUKE'S EPISCOPAL CHURCH, HAWORTH, NEW JERSEY, DEFENDANTS-RESPONDENTS.
Superior Court of New Jersey, Appellate Division.
Argued April 15, 1996.
Decided June 14, 1996.
*265 Before Judges HAVEY, D'ANNUNZIO and BRAITHWAITE.
Herbert D. Friedman and Alan L. Zegas argued the cause for appellant.
Gregory D. Winter argued the cause for respondents (Felzenberg, Winter & Winkler, attorneys).
The opinion of the court was delivered by D'ANNUNZIO, J.A.D.
This action for damages is based on a sexual relationship between plaintiff, an adult female, and defendant Rev. Alex MacDonell. The action against defendant Rev. Fletcher Harper is based on his disclosure to the congregation of the relationship between plaintiff and MacDonell.
Defendants moved for judgment on the pleadings, pursuant to R. 4:6-2(e). The court granted the motion on all counts against MacDonell and on Count IX against Harper. The three counts against MacDonell allege causes of action for negligence as a provider of "pastoral care and pastoral counseling," negligent infliction of emotional distress "in committing pastoral care and pastoral counseling malpractice," and breach of fiduciary duty. Count IX charged that Harper breached his fiduciary duty to plaintiff by "exploiting [her] trust and confidence by invading her privacy, making negligent misrepresentations to her ... defaming her, and by depicting her in a false light." The remaining counts against Harper allege invasion of privacy, negligent misrepresentation, defamation and depicting plaintiff in a false light.
The trial court determined that the counts against MacDonell and Count IX against Harper asserted causes of action described as clergy malpractice and that such a cause of action is not recognized, citing Schmidt v. Bishop, 779 F. Supp. 321 (S.D.N.Y. 1991). In Schmidt the court ruled that clergy malpractice was not actionable under New York law. The court held that recognition *266 of such a cause of action would unduly entangle the courts with religion, in violation of the First Amendment.
We granted plaintiff's motion for leave to appeal, and we now reverse and remand for further proceedings.
The standard under which motions to dismiss are considered is well-established in New Jersey. Trial courts should "approach with great caution applications for dismissal under R. 4:6-2(e) for failure of a complaint to state a claim on which relief may be granted." Printing Mart-Morristown v. Sharp Elec. Corp., 116 N.J. 739, 771-72, 563 A.2d 31 (1989). The test for determining the adequacy of a pleading is whether a cause of action is "suggested" by the facts. See Velantzas v. Colgate-Palmolive Co., 109 N.J. 189, 192, 536 A.2d 237 (1988). In reviewing a complaint dismissed pursuant to R. 4:6-2(e), the inquiry is limited to examining the legal sufficiency of the facts alleged on the face of the complaint. See Rieder v. State Department of Transp., 221 N.J. Super. 547, 552, 535 A.2d 512 (App.Div. 1987). However, a reviewing court "searches the complaint in depth and with liberality to ascertain whether the fundament of a cause of action may be gleaned even from an obscure statement of claim, opportunity being given to amend if necessary." Di Cristofaro v. Laurel Grove Memorial Park, 43 N.J. Super. 244, 252, 128 A.2d 281 (App.Div. 1957). For purposes of analysis plaintiffs are entitled to every reasonable inference of fact. See Independent Dairy Workers Union v. Milk Drivers Local 680, 23 N.J. 85, 89, 127 A.2d 869 (1956). "The examination of a complaint's allegations of fact required by the aforestated principles should be one that is at once painstaking and undertaken with a generous and hospitable approach." Printing Mart-Morristown, supra, 116 N.J. at 746, 563 A.2d 31.
Applying these principles, we glean from the complaint the following allegations. Plaintiff was a parishioner at All Saints' Episcopal Church, and MacDonell was the rector there and at Saint Luke's Episcopal Church. Plaintiff sought counseling from MacDonell. The nature and scope of the counseling is not defined *267 in the complaint. MacDonell assumed the role of counselor and thereby became aware of plaintiff's emotional vulnerabilities. MacDonell exploited those vulnerabilities to induce plaintiff to engage in sexual acts with him. The complaint describes the counseling relationship between plaintiff and MacDonell as "a special relationship in which MacDonell owed a special duty of care not to engage in unethical and harmful behavior towards [plaintiff]." Plaintiff alleges that MacDonell violated that duty of care causing physical, emotional and psychological injury.
Count III alleges that MacDonell had a fiduciary duty to act in plaintiff's best interests and "to refrain from conduct which carried with it the foreseeable and unreasonable risk of mental or emotional harm to her," and that MacDonell breached his fiduciary duty "by wrongfully and unlawfully exploiting [plaintiff's] trust and confidence by engaging in inappropriate sexual behavior with plaintiff."
The complaint also alleges that plaintiff filed a complaint with the "Standing Commission on Clergy Ethics of the Diocese of Newark," and that the committee determined that MacDonell "violated his pastoral relationship with plaintiff ... by engaging in inappropriate sexual behavior toward her." The committee "sanctioned" MacDonell in March 1994.
In Count IX, the count against Harper dismissed by the court, plaintiff alleges that Harper breached a fiduciary duty owed to plaintiff by the manner in which he informed the congregation of plaintiff's relationship with MacDonell.
The trial court's dismissal of the counts against MacDonell was consistent with a line of decisions resistant to the concept of "clergy malpractice." As previously indicated, the trial court cited Schmidt v. Bishop, supra, 779 F. Supp. 321. Schmidt was a member of a New York Presbyterian church. In 1960, when she was twelve, her parents brought her to Reverend Bishop, the church's pastor, for "`emotional, spiritual and familial counseling.'" Id. at 324. Schmidt alleged that she became emotionally dependent on Bishop and that he initiated sexual contact with her *268 shortly after the counseling relationship began. According to Schmidt, defendant "invoked God as supporting the conduct ... and informed her that `the relationship was special and acceptable in the eyes of the Lord.'" Ibid. The relationship between Schmidt and Bishop continued until 1989 when Schmidt terminated it as a result of psychotherapy she had begun in 1988.
The Schmidt court characterized Bishop's conduct as a crime of sexual abuse in the second degree under New York's penal code. Ibid. The court observed that the allegations of the complaint "support clearly an action for a battery or some similar intentional tort, for which the statute of limitations is one year." Ibid. The court, however, granted summary judgment to defendant on the complaint which alleged negligence, malpractice and breach of fiduciary duty. The court viewed those counts as sounding in clergy malpractice and rejected them.
The court saw the First Amendment of the United States Constitution as the major obstacle to a cause of action for clergy malpractice. Id. at 327. The court agreed with Nally v. Grace Community Church of the Valley, 47 Cal.3d 278, 253 Cal. Rptr. 97, 763 P.2d 948 (1988), cert. denied, 490 U.S. 1007, 109 S.Ct. 1644, 104 L.Ed.2d 159 (1989), that defining and imposing a duty of care on pastoral counselors would unduly entangle the courts in religious philosophy or ecclesiastical teachings. Ibid. The court in Schmidt stated:
Any effort by this Court to instruct the trial jury as to the duty of care which a clergyman should exercise, would of necessity require the Court or jury to define and express the standard of care to be followed by other reasonable Presbyterian clergy of the community. This in turn would require the Court and the jury to consider the fundamental perspective and approach to counseling inherent in the beliefs and practices of that denomination. This is as unconstitutional as it is impossible. It fosters excessive entanglement with religion.
[779 F. Supp. at 328.]
Nally v. Grace Community Church of the Valley, supra, relied on by the Schmidt court, is inapposite. There, the Supreme Court of California upheld a "nonsuit" granted by the trial court, i.e., a trial court determination that the evidence was insufficient to *269 permit a jury to find in plaintiffs' favor. Nally, supra, 253 Cal. Rptr. at 104-05, 763 P.2d at 955. Plaintiffs sought damages resulting from the suicide of their son. Plaintiffs sued the church, a Protestant Christian congregation, and four church pastors who had participated in counseling decedent. Plaintiffs alleged that defendants had failed in their duty to recognize that decedent was suicidal and to refer him to psychiatric care.
In affirming the nonsuit, thereby reversing the intermediate appellate court, the California Supreme Court held that defendants, as nontherapist counselors, had no duty to refer a counselee to psychiatric care. The court refused to extend the duty to prevent suicide, previously imposed on psychiatrists and hospitals caring for a suicidal patient, to non-licensed nontherapist counselors who provide counseling on "secular or spiritual matters." Id. 253 Cal. Rptr. at 110, 763 P.2d at 961. The court observed that "it would certainly be impractical, and quite possibly unconstitutional, to impose a duty of care on pastoral counselors. Such a duty would necessarily be intertwined with the religious philosophy of the particular denomination or ecclesiastical teachings of the religious entity." Id. 253 Cal. Rptr. at 109, 763 P.2d at 960.
We distinguish Nally from the present case on three grounds. First, constitutional considerations played a minimal role in the court's analysis. Second, the alleged breach of duty was closely connected with the content of the counseling and advice provided by the counselors. Lastly, Nally did not involve exploitation of the counselee for the counselors' sexual gratification.
Destefano v. Grabrian, 763 P.2d 275 (Colo. 1988), was an action against a Catholic priest and diocese arising out of a marriage counseling relationship between the counselor-priest and a married couple, Robert and Edna Destefano. The priest and Edna became sexually involved, and the Destefanos' marriage dissolved. Robert commenced an action for damages, originally naming Edna as a co-defendant, and Edna cross-claimed against the priest and the diocese.
*270 In evaluating Edna's claim, the court defined the "threshold issue" as whether the First Amendment immunized the priest's conduct. The court held that it did not because "[w]hen the alleged wrongdoing ... clearly falls outside the beliefs and doctrine of [the priest's] religion, he cannot avail himself of the protection afforded by the first amendment." Id. at 284.
Nevertheless, the court held that the claim for clergy malpractice was properly dismissed because "clergy malpractice is not supported by precedent and raises serious first amendment issues." Id. at 285. The court's ruling in this regard appears to have been based on Colorado licensing statutes which the court construed as evidencing "an intent to exclude religious counselors from the liability provision of the statute creating liability for mental health professionals." Id. at 286.
The court, however, did recognize Edna's causes of action for breach of a fiduciary duty, intentional or reckless infliction of emotional distress through outrageous conduct, and, as against the diocese, negligent supervision of the priest. See also Moses v. Diocese of Colorado, 863 P.2d 310, 321 (Colo. 1993) (reaffirming the viability of a cause of action for breach of fiduciary duty and the invalidity of a cause of action for clergy malpractice), cert. denied, ___ U.S. ___, 114 S.Ct. 2153, 128 L.Ed.2d 880 (1994).
Dausch v. Rykse, 52 F.3d 1425 (7th Cir.1994) was a diversity action applying Illinois law. Plaintiff alleged that she sought counseling from defendant Ryske, the pastor of her Presbyterian church. She alleged in her complaint that Ryske engaged "in sexual contact during the course of psychotherapy with the plaintiff, an emotionally dependent patient." Id. at 1427. Plaintiff appealed from the dismissal of her complaint for failure to state a claim upon which relief could be granted.
The court of appeals agreed with the trial court that a claim for clergy malpractice would not be viable under Illinois law, citing Baumgartner v. First Church of Christ, Scientist, 141 Ill. App.3d 898, 96 Ill.Dec. 114, 490 N.E.2d 1319, cert. denied, 479 U.S. 915, 107 S.Ct. 317, 93 L.Ed.2d 290 (1986). Dausch, supra, 52 F.3d at *271 1432. The court in Baumgartner determined that an action for clergy malpractice was not justiciable because adjudication of such a complaint "`would require the court to extensively investigate and evaluate religious tenets and doctrines.'" Dausch, supra, 52 F.3d at 1432 (quoting Baumgartner, supra, 96 Ill.Dec. 114, 490 N.E.2d at 1324.)[1] The court of appeals noted the risk of entangling civil courts in the examination of religious tenets if clergy malpractice were a recognized cause of action. Ibid.
The court of appeals, however, recognized that these First Amendment concerns have not been extended "to situations in which the conduct in question does not bear such a direct relationship to the doctrinal or organizational aspects of religious practice." Ibid. The court characterized "pastoral counseling" as "clearly and directly centered on matters of religion, and claims of negligence are not cognizable in the civil courts." Id. at 1433. However, if a church offers "purely secular counseling ... to the members of its congregation," those persons who provided such services on the church's behalf would be subject to civil adjudication of their performance. Ibid.
Therefore, if a complaint alleges that the psychological services that were provided were "secular" in nature, or that the provider held himself out to be providing the services of a psychological counselor, the negligence claim cannot be characterized as one for clergy malpractice. Tort claims for behavior by a cleric that does not require the examination of religious doctrine are cognizable.
[Ibid.]
The court of appeals held that some of the allegations in Mrs. Dausch's complaint could be read as stating a claim based on secular psychological counseling and not pastoral counseling. Consequently, it reversed the dismissal of plaintiff's claim based on professional negligence. Id. at 1435.
The viability of a claim for clergy malpractice is an issue of first impression in New Jersey. Malpractice is a negligence *272 cause of action. It is nothing more than the negligent performance of a professional service. It is a deviation from the standards of performance applicable to the professional service in question. See Sanzari v. Rosenfeld, 34 N.J. 128, 134-35, 167 A.2d 625 (1961). A major distinction between the "usual negligence case" and a case of professional negligence is that in the latter, the standard of care ordinarily must be established by expert testimony. Id. at 134-35, 167 A.2d 625.
Regarding the risk of undue entanglement in ecclesiastical affairs arising out of a case of clergy malpractice, we share the concerns of those courts that have addressed the issue. We are, however, persuaded that those concerns are overstated in circumstances, such as the present case, involving a cleric's sexual misconduct. Cf. Welter v. Seton Hall Univ., 128 N.J. 279, 291, 608 A.2d 206 (1992) (holding that defendants failed to demonstrate that an employment dispute turned "on issues of doctrine or polity" and, therefore, the trial court properly exercised jurisdiction and the "sincerity" of defendant's religious beliefs was not legally relevant to their jurisdictional claim). But cf. DeBose v. Bear Valley Church of Christ, 890 P.2d 214, 222 (Colo.Ct.App. 1994) (reversing a judgment in favor of plaintiffs and holding that the trial court erred in not instructing the jury that the cleric could not be held liable if his massage of the minor plaintiff "was engaged in solely in a sincere effort to facilitate the minor's communication with God").
We are also persuaded that the distinction suggested in Dausch v. Rykse, supra, between pastoral counseling and secular psychological counseling, is unworkable because it is difficult to apply. A cleric's counseling activities may be infused with doctrinal and spiritual content, though the cleric is providing secular services regarding marital discord, depression, anxiety and parent-child conflicts.
We conclude that one test to determine whether a cause of action against a cleric is cognizable in civil courts is whether adjudication of the claim requires an evaluation of dogma or ritual, *273 or other matters of purely ecclesiastical concern. In the present case, it is unlikely that defendants will assert that sex with a counselee by a pastoral counselor is sanctioned by or somehow involves tenets of the Episcopalian church, or would otherwise create an entanglement with religious beliefs or rituals of First Amendment concern. See Strock v. Pressnell, 38 Ohio St.3d 207, 527 N.E.2d 1235 (1988) (holding that the First Amendment was not available as a defense in action against minister who had sexual relations with plaintiff's wife while counseling the couple regarding their marital difficulties).
Moreover, there is a bright line between counseling culminating in a sexual relationship with a counselee and other types of harms allegedly resulting from a failed counseling relationship. Cf. Nally v. Grace Community Church of the Valley, supra, 253 Cal. Rptr. 97, 763 P.2d at 948 (holding that claim for son's suicide was not actionable). Thus, we do not share the concern expressed in Schmidt v. Bishop, supra, 779 F. Supp. 321, that to recognize a cause of action for the sexual exploitation of a child would place civil courts "on the slippery slope," because we "must consider not only this case, but the next case to follow, and the ones after that, before we embrace the newly invented tort of clergy malpractice." Id. at 328.
Courts in other jurisdictions have recognized additional barriers to claims of clergy malpractice. The Ohio Supreme Court summarized some of them in Strock v. Pressnell, supra 527 N.E.2d at 1239:
The reluctance of courts to embrace the tort of clergy malpractice may be attributed to the many, and often complex, questions that arise under it. For example, what exactly are the "professional services" rendered by a cleric? And does the standard of the professional vary with the ecclesiastical office? In other words, is a rabbi, priest, pastor, or lay elder held to the same standard of care regardless of training or wide variances in the authority and obligation of religious offices? Also, where a "professional service," such as the marriage counseling involved in this case, is not unique to the cleric, should the cleric be held to the same duty of care as secular counselors?
[Ibid.]
*274 We do not minimize these concerns. They appear, however, to present problems of proof and definition which should not be addressed on a motion to dismiss under R. 4:6-2(e), but rather, should await resolution on a more fully informed record.
Ultimately, the court in Strock rejected plaintiffs clergy malpractice claims because "[m]alpractice ... is not a theory of ordinary negligence or of intentional tort. It is a separate and distinct cause of action." Strock, supra, 527 N.E.2d at 1239. To be recognized, clergy malpractice "must fall outside the scope of other recognized torts." Ibid. The court held that the alleged acts of the defendant "fell within the realm of intentional tort law," and, therefore, were not actionable as malpractice. Ibid. The court then reasoned that the intentional tort alleged in the complaint was an amatory action, such as alienation of affection and seduction, which the Ohio Legislature had abolished. Id. at 1240. The court concluded, therefore, that plaintiff's cause of action for intentional infliction of emotional distress could not be maintained. Id. at 1243. The court, for the same reason, ruled that a cause of action for breach of a fiduciary duty was not viable. Id. at 1243-44.
In New Jersey we have no rule that requires a cause of action to "fall outside the scope of other recognized torts" before it may be maintained. To the contrary, our rules permit the pleading of alternative causes of action "regardless of their consistency." R. 4:5-6. See Burd v. Sussex Mutual Ins. Co., 56 N.J. 383, 267 A.2d 7 (1970). In any event, as previously indicated, an action for malpractice is, at its core, a negligence action.
Sanders v. Casa View Baptist Church, 898 F. Supp. 1169 (N.D.Tex. 1995), is another example of judicial reluctance to entertain a claim for clergy malpractice. In that case, the court denied a minister's motion for summary judgment. Ruling that plaintiffs could not maintain a claim based on clergy malpractice, the court construed the claim as one for "professional malpractice by a marriage counselor, not clergy malpractice." Id. at 1175. The action was deemed to be maintainable under that rubric.
*275 Finally, in DeBose v. Bear Valley Church of Christ, supra, 890 P.2d 214, the court rejected a claim based on clergy malpractice because such a course of action would require the promulgation of standards against which a cleric's performance would be measured. The court stated that "[t]o attempt to require members of the clergy to comply with such a standard, however, could very well restrict their right freely to exercise and practice their religion." Id. at 225.
New Jersey courts have recognized causes of action for professional negligence against chiropractors, Rosenberg by Rosenberg v. Cahill, 99 N.J. 318, 492 A.2d 371 (1985), accountants, Rosenblum v. Adler, 93 N.J. 324, 461 A.2d 138 (1983), and real estate brokers, Paris of Wayne v. Richard A. Hajjar Agency, 174 N.J. Super. 310, 416 A.2d 436 (App.Div.), certif. denied, 85 N.J. 454, 427 A.2d 555 (1980); Sullivan v. Jefferson, Jefferson & Vaida, 167 N.J. Super. 282, 400 A.2d 836 (App.Div. 1979). We perceive no impenetrable barrier, on the limited record before us, to establishing a standard of care applicable to cleric-counselors in the context of an allegation that the counselor used his position to sexually exploit the counselee. Cf. Simmons v. United States, 805 F.2d 1363, 1365 (9th Cir.1986) (affirming judgment based on sexual exploitation of plaintiff by a social worker-counselor, discussing the "transference phenomenon" and noting that "[w]hen the therapist mishandles transference and becomes sexually involved with a patient, medical authorities are nearly unanimous in considering such conduct to be malpractice"); Corgan v. Muehling, 143 Ill.2d 296, 158 Ill.Dec. 489, 574 N.E.2d 602 (1991) (holding that complaint stated cause of action for negligence arising from psychologist's engaging in relations with plaintiff during course of treatment); N.J.A.C. 13:42-10.9 (prohibiting a psychologist licensed in New Jersey from engaging in sexual relations "with a current psychotherapy client, a former client, ... a current student, a direct supervisee or supervisor, or a research participant.").
Whether plaintiff can establish an applicable standard of care, show that MacDonell breached this standard, and prove the *276 damages proximately flowing from that breach, are all issues of proof which cannot be determined on a motion for judgment on the pleadings. Cf. Simmons v. United States, supra, 805 F.2d at 1366 (suggesting a distinction between a therapist-patient relationship and sexual involvement of a minister with a parishioner because the minister "does not offer a course of counselling predicated upon handling the transference phenomenon.") (citing A. Stone, M.D., Law, Psychiatry, and Morality 199 (1984)).
Finally, we note again that this is a case of first impression in New Jersey. We also note that issues regarding inappropriate sexual behavior by clerics are matters of current public concern. We are persuaded that those issues should not be addressed except on a well-informed record. See Jackson v. Muhlenberg Hospital, 53 N.J. 138, 142, 249 A.2d 65 (1969).
Although defendant Harper was not sexually involved with plaintiff, the trial court treated Count IX, alleging breach of a fiduciary, as a malpractice count and dismissed it on that basis. For the reasons expressed above, we conclude that the court erred in dismissing this "malpractice" count. We do not, however, foreclose the trial court, as the record develops below, from treating the fiduciary duty counts as stating causes of action separate and distinct from negligence-malpractice. See Moses v. Diocese of Colorado, supra, 863 P.2d 310; Destefano v. Grabrian, supra, 763 P.2d 275.
The order dismissing all counts against MacDonell and Count IX against Harper is reversed and the case is remanded for further proceedings.
NOTES
[1] In footnote 4 of the Dausch opinion, 52 F.3d at 1432, the court of appeals lists state court decisions rejecting clergy malpractice.