LEVERAGE LEASING CO.,
Plaintiff–Appellant,

v.

Carol S. SMITH and Kenneth A. Smith,
Defendants–Appellees.

No. 05CA0432.

Colorado Court of Appeals,
Div. A.

Aug. 10, 2006.

---

* Sitting by assignment of the Chief Justice under provisions of Colo. Const. art. VI, § 5(3), and

§ 24–51–1105, C.R.S.2005.

Harry L. Simon, P.C., Harry L. Simon, Russell B. Klein, Denver, Colorado, for Plaintiff–Appellant.

Boatright, Ripp & Sharpe, LLC, Gerald E. Boatright, Thomas R. Ripp, Wheatridge, Colorado, for Defendants–Appellees.

Opinion by Judge WEBB.

In this fraudulent conveyance action, plaintiff, Leverage Leasing Co., appeals the judgment entered following a bench trial in favor of defendants, Kenneth A. Smith (husband) and Carol S. Smith (wife). We reverse and remand.

Plaintiff brought this action to enforce a judgment that it had obtained against husband based on his personal guarantee of a company debt to plaintiff. According to plaintiff, the trial court erred in concluding that zero dollars could constitute "reasonably equivalent value" under § 38–8–105(1)(b), C.R.S.2005, of the Colorado Uniform Fraudulent Transfer Act (CUFTA), in connection with husband's 2003 transfer of his joint interest in the family home to wife. We agree with plaintiff.

The court made the following findings, which the record supports and the parties do not dispute.

The Smiths bought the home in 1963. By 1982, they owned it free and clear. At that time, husband quitclaimed his joint interest in the home to wife for no consideration, but he continued to reside in the home.

In 1999, wife pledged the home as collateral for a $200,000 loan from a nonparty lender. The proceeds went to the company whose debt to plaintiff husband had guaranteed. A year later, when the company could not repay the loan, it arranged refinancing from another nonparty lender. At the new lender's request, wife quitclaimed her interest in

the home to a joint tenancy with husband, for which he gave no consideration. The closing documents reflected a loan to husband and wife, now secured by both of their interests in the home.

Although wife may not have understood that the refinancing documents created a joint tenancy, her lack of understanding arose because she did not read the documents at the closing. The documents were clear. No false representations were made concerning them.

In 2003, husband quitclaimed his interest in the home back to wife, again with no consideration. Husband then knew that plaintiff was suing him based on his personal guarantee. Husband also should have known that he would be incurring debts beyond his ability to pay them as they came due. Thus, the transfer of the interest in the home rendered him insolvent for purposes of the CUFTA. *See* § 38–8–105(2)(i), C.R.S.2005.

Based on these findings, the court acknowledged that the 2003 transfer of husband's interest to wife should be set aside as a fraudulent conveyance, unless it found that reasonably equivalent value had been given. The court so found, "solely because of the undisputed history of the transactions involving this property" between husband and wife. The court explained, "But he gave her exactly what she had given to him—or she gave him exactly the same consideration he had given to her, and both of them throughout this intended that this would be her home."

## I.

■ Plaintiff first contends the trial court erred in concluding that husband's transfer of his interest in the home back to wife in 2003 was for reasonably equivalent value and therefore was not fraudulent. We agree.

■ Statutory interpretation is a question of law that we review de novo. *Ryals v. St. Mary–Corwin Reg'l Med. Ctr.,* 10 P.3d 654 (Colo.2000). Courts have a fundamental responsibility to interpret statutes to effect the General Assembly's intent, giving the words in the statute their plain and ordinary meaning. *Golden Animal Hosp. v. Horton,* 897 P.2d 833 (Colo.1995). We accept the intent of the drafters of a uniform act as the General Assembly's intent when it has adopted such an act. *Copper Mountain, Inc. v. Poma, Inc.,* 890 P.2d 100 (Colo.1995).

The CUFTA is based on the Uniform Fraudulent Transfer Act (UFTA), which in turn was derived from the Uniform Fraudulent Conveyance Act. *See* Tit. 38, art. 8, Uniform Fraudulent Transfer Act Prefatory Note, C.R.S.2005.

Under the UFTA § 4 and the CUFTA, fraudulent transfers include those made without an exchange of "a reasonably equivalent value" and those made by insolvent debtors:

(1) A transfer made or obligation incurred by a debtor is fraudulent as to a creditor, whether the creditor's claim arose before or after the transfer was made or the obligation was incurred, if the debtor made the transfer or incurred the obligation:

. . .

(b) Without receiving a reasonably equivalent value in exchange for the transfer or obligation, and the debtor:

(I) Was engaged or about to engage in a business or a transaction for which the remaining assets of the debtor were unreasonably small in relation to the business or transaction; or

(II) Intended to incur, or believed or reasonably should have believed that he would incur, debts beyond his ability to pay as they came due.

Section 38–8–105, C.R.S.2005.

"Reasonably equivalent value is required in order to constitute adequate consideration" under the UFTA. Prefatory Note, *supra.* Such value "is not wholly synonymous with market value," and it "depends upon an analysis of all the facts and circumstances of each case." *Silverberg v. Colantuno,* 991 P.2d 280, 287 (Colo.App.1998).

Comment 2 to the UFTA § 4, the counterpart of § 38–8–105, states, in relevant part, that the UFTA substitutes "reasonably equivalent value" for "fair consideration" in the predecessor act, under which the transferee's good faith was an element of "fair consideration." But under the UFTA, "[t]he

transferee's good faith is irrelevant to a determination of the adequacy of the consideration."

Section 38–8–104, C.R.S.2005, the counterpart of the UFTA § 3, defines "value" that is "given for a transfer or an obligation." Comment 2 states that value "is to be determined in light of the purpose of the Act to protect a debtor's estate from being depleted to the prejudice of the debtor's unsecured creditors." The comment explains that "[c]onsideration having no utility from a creditor's viewpoint," such as love and affection, "does not satisfy the statutory definition."

The phrase "reasonably equivalent value," which was derived from 11 U.S.C. § 548 of the federal Bankruptcy Code, has been construed to include both direct and indirect benefits to the transferor, even if the benefit does not increase the transferor's net worth. *See In re Image Worldwide, Ltd.,* 139 F.3d 574 (7th Cir.1998); *In re Tri–Star Techs. Co.,* 260 B.R. 319, 325 (Bankr.D.Mass.2001); *In re Auto Specialties Mfg. Co.,* 153 B.R. 457, 498 (Bankr.W.D.Mich.1993).

Nevertheless, a court must also keep in mind the equitable purposes of the UFTA because any significant disparity between the benefit received and the value transferred harms innocent creditors. *In re Tri–Star Techs. Co., supra.*

Here, the record does not indicate that husband received any benefit, direct or indirect, from the transfer of his interest in the home back to wife in 2003. At that time, she did not assume additional liability concerning the loan to the company with which husband was affiliated.

Neither the trial court nor the parties have cited a case, nor have we found one, holding that a transfer for which the transferor received no direct or indirect benefit was supported by "reasonably equivalent value." Thus, we are persuaded that the trial court erred in concluding that husband's 2003 transfer was supported by reasonably equivalent value.

Recognizing that such a transfer could be supported by reasonably equivalent value would contravene the UFTA's purpose of protecting a debtor's estate from depletion, to the prejudice of unsecured creditors. Focusing on the history of past transfers between the parties, as the trial court did here, would violate the mandate to ignore consideration having no utility to creditors. And looking to the relationship between the parties suggests inquiry into good faith, which the UFTA expressly eschews.

The Smiths' argument based on § 38–10–120, C.R.S.2005, which provides that fraudulent intent "shall be deemed a question of fact and not of law," is unpersuasive. Husband's intent might be relevant under § 38–8–105(1)(a) as to transfers made "with actual intent to hinder, delay, or defraud any creditor." But this case involves § 38–8–105(1)(b), which does not require proof of intent.

Accordingly, we conclude that husband's 2003 transfer of his interest in the home to wife was fraudulent. Having reached this conclusion, we need not address plaintiff's alternative argument that the transfer was "merely colorable," *In re Scavello,* 194 Colo. 64, 67, 570 P.2d 1, 3 (1977), and thus invalid.

## II.

■ The Smiths argue that the title acquired by husband in 2000 was subject to a constructive or resulting trust in wife's favor, and thus, his transfer back to her in 2003 could not have been fraudulent. We disagree.

Below, the Smiths raised this contention in their trial brief and during closing argument. The court ruled, "I don't find that the constructive trust or resulting trust arguments have any merit." Although the Smiths failed to cross-appeal this ruling, we reject plaintiff's assertion that the trust issue is not properly before us.

■ In general, an appellee must file a cross-appeal before the appellate court may consider an alleged trial court error that prejudiced the appellee. *Blocker Exploration Co. v. Frontier Exploration, Inc.,* 740 P.2d 983 (Colo.1987). Without filing a cross-appeal, however, an appellee may raise any argument in support of the trial court's judgment, so long as the appellee does not seek

to increase its rights under the judgment. *Farmers Group, Inc. v. Williams,* 805 P.2d 419 (Colo.1991). The exception permits the appellee to make arguments that "involve an attack on the reasoning of the [trial] court," *Ehrle v. Dep't of Admin.,* 844 P.2d 1267, 1271 (Colo.App.1992), "whether or not the trial court has ruled on those arguments." *United Air Lines, Inc. v. City & County of Denver,* 973 P.2d 647, 651 (Colo.App.1998), *aff'd,* 992 P.2d 41 (Colo.2000).

Here, the Smiths' contention that husband's transfer of his interest in the home back to wife could not have been fraudulent because that interest was subject to a constructive or resulting trust attacks the reasoning of the trial court. But our acceptance of that contention would not increase their rights under the judgment being appealed. Hence, the issue is properly before us.

A constructive trust focuses on the equities of the party in legal title and may be imposed to prevent unjust enrichment. *Cedar Lane Invs. v. Am. Roofing Supply, Inc.,* 919 P.2d 879 (Colo.App.1996). Where the holder of legal title may not, in equity and good conscience, retain the beneficial interest, equity converts that holder to a trustee. *In re Marriage of Heinzman,* 40 Colo.App. 262, 579 P.2d 638 (1978), *aff'd,* 198 Colo. 36, 596 P.2d 61 (1979).

A resulting trust may be imposed where the circumstances raise an inference that the transferor did not intend that the transferee should have a beneficial interest in the property transferred. *Mancuso v. United Bank,* 818 P.2d 732 (Colo.1991).

According to the Smiths, if the 2000 conveyance vested an interest in the home in husband, wife "did not intend to make a gift of an interest in the home" to him, and thus, his resulting legal title "was subject to a constructive or resulting trust in her favor." We are not persuaded.

The trial court rejected the trust argument on the basis that the case was controlled by the CUFTA. The Smiths have cited no authority, and we have found none in Colorado, holding that a conveyance of property subject to a constructive or resulting trust to the beneficiary of that trust would thereby be immune from challenge as fraudulent under the CUFTA.

Further, the trial court rejected the Smiths' assertion that they were unaware an interest in the property was being transferred to husband in 2000, explaining, "[T]he law would infer that knowledge. The only reason they weren't aware was because they chose not to read the closing documents." The court then observed that "the cases dealing with constructive trusts and resulting trusts are by and large inapposite here." We agree.

But even assuming that transfer of a legal interest subject to a constructive or resulting trust could not be challenged under the CUFTA, we discern no unjust enrichment in husband's receipt of a portion of wife's legal interest in the property, to facilitate the refinancing in 2000. Without the refinancing, the initial loan would have been payable, and the home that secured this loan, then solely in wife's name, would have been at risk. Had the company in which husband held an interest prospered as a result of the refinancing, wife could have benefited indirectly.

The court's conclusion that the Smiths' failure to read the refinancing documents lacks legal significance is in accord with Colorado law. *See Rasmussen v. Freehling,* 159 Colo. 414, 412 P.2d 217 (1966) (party who signs contract without reading it is barred by negligence from asserting that he is not bound by what he has signed). This conclusion defeats the resulting trust argument, which rests on wife's alleged lack of intent to transfer an interest in the home to husband.

Accordingly, we discern no legal or factual support for the Smiths' trust argument.

### III.

Finally, the Smiths contend wife did not intend to transfer an interest in the home to husband in 2000. Again, we disagree.

As discussed above, the trial court found that the documents accurately reflected the nature of the transaction. On appeal, the Smiths do not challenge the trial court's findings that the refinancing was not tainted by fraud or similar misconduct.

These documents included a deed of trust signed by both husband and wife for the benefit of the lender. Thus, had wife read these documents, she would have recognized that she had created an interest in the home which husband could encumber.

The judgment is reversed, and the case is remanded for further proceedings consistent with this opinion.

Chief Judge DAVIDSON and Judge NEY * concur.

---

* Sitting by assignment of the Chief Justice under provisions of Colo. Const. art. VI, § 5(3), and

§ 24–51–1105, C.R.S.2005.