23CA1555 Walton v Brooks 09-05-2024 COLORADO COURT OF APPEALS Court of Appeals No. 23CA1555 Montrose County District Court No. 23CV10 Honorable Mary E. Deganhart, Judge Elizabeth C. Walton, Plaintiff-Appellee, v. Cynthia Brooks, Defendant-Appellant. JUDGMENT AFFIRMED Division VI Opinion by JUDGE SCHUTZ Freyre and Lipinsky, JJ., concur NOT PUBLISHED PURSUANT TO C.A.R. 35(e) Announced September 5, 2024 Chris Mahre & Associates, Chris Mahre, Grand Junction, Colorado, for Plaintiff-Appellee Cynthia Brooks, Pro Se 
1 ¶ 1 Cynthia Brooks appeals the district court’s judgment granting Elizabeth C. Walton and Kathryn Herland
1 judgment for possession in a forcible entry and detainer action (FED).
2 We affirm. I. Background and Procedural History ¶ 2 John Walton
3 and Brooks’s marriage was dissolved in 2004. They shared two daughters, Walton and Herland. In 1984, while John and Brooks were still married, John purchased a 400-acre parcel of land in Naturita and built a cabin on it. The parcel was equally divided between John and Brooks as a part of the dissolution of marriage. We refer to John’s resulting parcel as Parcel A and Brooks’s resulting parcel as Parcel B. Parcel A contained the cabin and related improvements, while Parcel B was unimproved. ¶ 3 John died in 2008. Although he left Parcel A to his daughters, the executor of John’s estate did not properly convey the property to 1 Herland was dismissed as a party to the appeal in Case No. 23CA1555 after she failed to enter an appearance. 2 Brooks separately appealed the district court’s award of attorney fees and costs to Walton in Case No. 23CA1763. We address that appeal in a contemporaneous opinion entered in that case. 3 We refer to John by his first name because he and Elizabeth share the same last name. We mean no disrespect in doing so. 
2 them until 2019. Brooks began living in the cabin on Parcel A before 2019, but the parties dispute when. Brooks contends that she started living in the cabin around 2006, while Walton contends that she did not start living there until 2013. ¶ 4 The parties also dispute the nature of Brooks’s interest in Parcel A. Walton contends that the parties entered into a verbal tenancy at will pursuant to which Brooks could live in the cabin in exchange for taking care of Parcel A. In contrast, Brooks contends that she lived on Parcel A with John from 2006 until his death in 2008, that she retained the right to live on Parcel A after his death, and that she lived there from 2006 until the present dispute, with no written lease agreement. ¶ 5 In late 2022, Brooks and her daughters had a series of disagreements. In January 2023, after livestock belonging to Brooks’s boyfriend allegedly damaged Parcel A, Walton and Herland served Brooks with a notice to quit, pursuant to section 13-40-107, C.R.S. 2023. Brooks remained on the property, however. ¶ 6 Walton then filed an FED action in county court in which she sought a judgment for possession of Parcel A and $22,335 for the damage caused by the livestock. In her answer, Brooks asserted an 
3 adverse possession defense, sought to retain possession of the property, and asserted a counterclaim
4 in the amount of $103,510 for an unspecified debt. The county court transferred the matter to the district court after finding that it lacked jurisdiction over matters affecting the title of real property. § 13-6-105(1)(e), C.R.S. 2024 (county courts have no jurisdiction over matters “affecting boundaries or title to real property”). ¶ 7 In the early spring of 2023, Brooks moved from Parcel A to a property located in Whitewater (the Whitewater address). Despite the move, Brooks’s mailing address on file with the district court remained her mailbox at Parcel A, which had a street address on Rock Creek Road in Naturita (the Rock Creek address). ¶ 8 Brooks filed a request for documents in February 2023. In the caption of the request, Brooks again listed her Rock Creek address, although in the document’s body she stated that she wanted the requested documents sent to her at the Whitewater address. After 4 It appears that Brooks’s counterclaim was effectively resolved by the district court’s entry of the judgment for possession. Brooks did not pursue her counterclaim after entry of that judgment, and the parties treated the judgment as a final resolution of the counterclaim, subject to Walton’s claim for attorney fees and costs, which the district court later resolved. 
4 Brooks retained counsel, the district court sent all filings in the case to her attorneys until they withdrew from the case. ¶ 9 Brooks fired her attorneys in May 2023, about a week before the parties attended a court-ordered mediation. Before they withdrew from the case, her attorneys provided Brooks with a disengagement packet that included a motion to withdraw and a notice of withdrawal. In accordance with C.R.C.P. 121, section 1-
1(2)(b), the notice advised Brooks that she had “the burden of keeping the court . . . informed where notices, pleadings, or papers may be served.” The notice identified the Rock Creek address as Brooks’s last known address. ¶ 10 Brooks admitted that she never read the motion to withdraw and corresponding notice because she stopped reading the documents in the disengagement packet due to the “patronizing” tone of the first sentence of her attorney’s cover letter. Because she failed to read the documents, Brooks did not know that her counsel had indicated that her last known address was the Rock Creek address and did not notify the district court that her mail should be sent elsewhere. 
5 ¶ 11 In June, after the parties confirmed that the mediation was unsuccessful, the district court set the matter for a hearing on Walton’s claim for possession (the FED hearing). It mailed the notice of the FED hearing and subsequent filings to the Rock Creek address. Brooks failed to appear at the FED hearing. Before proceeding in her absence, the district court noted that it had not been notified that the correspondence it sent to Brooks was returned, nor did it receive notifications from the post office that the district court’s correspondence to Brooks was otherwise undeliverable to her.
5 ¶ 12 At the FED hearing, Walton’s counsel made an offer of proof and submitted, as an exhibit, an unsigned memorandum of understanding (MOU) from the mediation. The MOU listed the items located at Parcel A and identified six items that Brooks had claimed were her personal property. In addition, at the FED hearing, Walton’s counsel orally requested an award of attorney fees. Following the FED hearing, the district court entered a 5 The district court had received returned mail addressed to Herland prior to the FED hearing but did not receive any returned mail addressed to Brooks until after the judgment of possession was entered. 
6 judgment of possession in Walton’s and Herland’s favor and issued a writ of restitution.
6 ¶ 13 The district court took Walton’s request for attorney fees under advisement, ordered her to file a motion in support of such request, and permitted Brooks to file a response to the motion within fourteen days. Walton timely filed a motion for attorney fees and costs, Brooks filed a timely response, and the district court awarded Walton her requested fees and costs, about a month after the FED hearing. ¶ 14 Brooks claims that she first learned of the FED hearing in early August, after a sheriff informed her of the writ of restitution. After the conversation with the sheriff, Brooks contends that she checked the mailbox at the Rock Creek address but found no mail there. She then went to the post office, where a postal employee informed her that, due to concerns over mail theft, the postal service had returned the mail in the box to the senders because the box was unattended. ¶ 15 Brooks appeals the judgment for possession. 6 Walton voluntarily withdrew her damages claim at the FED hearing. 
7 II. Notice Claims ¶ 16 Brooks asserts two claims premised on her asserted lack of actual notice of the FED hearing. First, she argues that the district court reversibly erred by sending the notice of hearing and related filings to the Rock Creek address rather than to the Whitewater address. Second, she argues that the error violated her due process rights. We perceive no reversible error. A. Standard of Review and Applicable Law ¶ 17 We review a district court’s interpretation of the Colorado Rules of Civil Procedure de novo. Schaden v. DIA Brewing Co., 2021 CO 4M, ¶ 32. The Colorado Rules of Civil Procedure require that “[a]ll settings of trials and hearings, other than those set on the initiative of the court, shall be by the courtroom clerk upon notice to all other parties. . . . [T]he notice . . . shall contain . . . [a] statement that the party or attorney being notified may appear or if not present, will be called at or about the time specified.” C.R.C.P. 121, § 1-6(1)(e) (emphasis added). ¶ 18 Service of filings on an unrepresented party is made by “[m]ailing a copy to the last known address of the person served.” C.R.C.P. 5(b)(2)(B). “Service by mail is complete on mailing.” Id. 
8 An attorney’s motion to withdraw from representation of a client shall contain an advisement that the client bears “the burden of keeping the court and the other parties informed where notices, pleadings or other papers may be served” and that, “if the client fails or refuses to comply with all court rules and orders, the client may suffer possible dismissal, default or other sanctions.” C.R.C.P. 121, § 1-1(2)(b)(I)-(II). A party is deemed to have notice of documents that it receives but refuses to read. See Leverage Leasing Co. v. Smith, 143 P.3d 1164, 1168 (Colo. App. 2006) (the failure to read a document does not provide a legal defense); see also Stewart v. Preston Pipeline Inc., 36 Cal. Rptr. 3d 901, 921 (Ct. App. 2005) (“[A] party ordinarily may not obtain relief based upon unilateral mistake where he or she has failed to read the contract before signing it.”). B. Application ¶ 19 Brooks contends that the district court failed to comply with C.R.C.P. 121 by failing to send her notice of the FED hearing to the Whitewater address. She argues that the district court should have been on notice that her address was incorrect because her request for documents directed that responsive documents be submitted to 
9 her at the Whitewater address and because Walton mailed filings to her at that location. Brooks also asserts that the district court’s failure to verify her contact information deprived her of her due process rights. We conclude that the district court did not err by sending Brooks notices at the Rock Creek address. ¶ 20 Prior to the FED hearing, all of Brooks’s filings contained the Rock Creek address. At no point did Brooks notify the district court that her address had changed. In April, before withdrawing from the case, Brooks’s counsel provided her with a notice of withdrawal that complied with C.R.C.P. 121, section 1-1, and identified Brooks’s last known address as the Rock Creek address. ¶ 21 Brooks received the notice but did not read beyond the first sentence because of her perception of its tenor. To state the obvious, a pro se party cannot refuse to read something and then claim ignorance of its content. See Leverage, 143 P.3d at 1168. Hence, Brooks is deemed to have knowledge that the district court was informed that her last known address was the Rock Creek address. ¶ 22 The district court had no reason to believe that this was not Brooks’s correct address. As the district court noted, before the 
10 FED hearing, the post office had not returned any of the mailings sent to Brooks at the Rock Creek address. ¶ 23 Moreover, Brooks’s reliance on C.R.C.P. 121, section 1-6(1), is misplaced. That rule applies to notices to set trial dates initiated by a party. Id. In such instances, the rule burdens the party with the responsibility of notifying the other parties of trial setting dates. In contrast, the district court sent the notice to set the FED hearing on its own initiative. Therefore, C.R.C.P. 121, section 1-6(1), does not apply. Moreover, the record reveals that the district court mailed the notice to set to Brooks at the Rock Creek address. ¶ 24 Because the district court had no reason to believe that the Rock Creek address was not Brooks’s correct address, we discern no error in the district court using her address of record. For the same reasons, it necessarily follows that Brooks was not denied due process. III. Additional Evidentiary and Procedural Claims ¶ 25 Brooks argues that we should address several of her unpreserved evidentiary claims, including that the district court (1) lacked sufficient evidence to enter judgment in Walton’s favor; 
11 (2) improperly relied on inaccurate statements in the offer of proof; and (3) improperly considered the MOU. ¶ 26 Brooks did not preserve any of these evidentiary issues in the district court because she failed to appear at the FED hearing. Moreover, when she learned that the district court had conducted the FED hearing in her absence and entered a judgment of possession and writ of restitution against her, she failed to bring her evidentiary claims to the district court’s attention through a C.R.C.P. 60(b) motion. ¶ 27 Generally, we refuse to consider unpreserved claims in civil actions absent extraordinary circumstances. Gestner v. Gestner, 2024 COA 55, ¶ 18. “Thus, only in a ‘rare’ civil case, involving ‘unusual or special’ circumstances — and even then, only ‘when necessary to avert unequivocal and manifest injustice’ — will an appellate court reverse based on an unpreserved claim of error.” Wycoff v. Grace Cmty. Church of Assemblies of God, 251 P.3d 1260, 1269 (Colo. App. 2010) (quoting Harris Grp., Inc. v. Robinson, 209 P.3d 1188, 1195 (Colo. App. 2009)). Brooks does not point to any such extraordinary circumstances, and we do not perceive any from 
12 our review of the record. Accordingly, we do not consider Brooks’s evidentiary arguments on the merits. IV. Disposition ¶ 28 The district court’s judgment for possession is affirmed. JUDGE FREYRE and JUDGE LIPINSKY concur.